*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps Court of Criminal Appeals

Before
GASTON, ATTANASIO, and STEWART
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Trenton J. ALLISON**
Corporal (E-4), U.S. Marine Corps
*Appellant*

**No. 201800251**

Decided: 16 November 2021

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Eugene H. Robinson, Jr.

Sentence adjudged 23 April 2018 by a special court-martial convened at Marine Corps Base Camp Foster, Okinawa, Japan, consisting of a military judge sitting alone. Sentence approved by the convening authority: reduction to E-1, confinement for eight months, forfeiture of $1,092 pay per month for eight months, and a bad-conduct discharge.

For Appellant:
*Lieutenant Commander Jacqueline M. Leonard, JAGC, USN*

For Appellee:
*Major Clayton L. Wiggins, USMC*
*Lieutenant Commander Jeffrey S. Marden, JAGC, USN*

Judge ATTANASIO delivered the opinion of the Court, in which Senior Judge GASTON and Judge STEWART joined.

_____

**This opinion does not serve as binding precedent under
NMCCA Rule of Appellate Procedure 30.2(a).**

_____

ATTANASIO, Judge:

A military judge sitting as a special court-martial convicted Appellant, in accordance with his pleas, of one specification of conspiracy to wrongfully distribute a controlled substance and one specification of wrongful distribution of a controlled substance in violation of Articles 81 and 112a, Uniform Code of Military Justice [UCMJ].[1] The military judge sentenced Appellant to eight months of confinement, reduction to paygrade E-1, forfeiture of $1,092 pay per month for eight months, a reprimand, and a bad-conduct discharge. The convening authority disapproved the letter of reprimand but otherwise approved the sentence as adjudged.

Appellant asserts a single assignment of error: unreasonable post-trial delay violated his right to due process. We find no due process violation but find unreasonably excessive delay and, pursuant to our broad authority to determine sentence appropriateness under Article 66, UCMJ, we grant sentence relief by setting aside the adjudged forfeiture of pay. Finding no other prejudicial error, we affirm the findings and the remainder of the approved sentence.

## I. BACKGROUND

This case is before us for review a third time. Each of the first two times, we found error in the convening authority's Action [Action] and remanded for a new Action and a new staff judge advocate's recommendation [SJAR].[2] Following completion of what is now SJAR No. 3 and Action No. 3, the case has returned to this Court for completion of appellate review. To complete

---

[1] 10 U.S.C. §§ 881, 912a.

[2] *United States v. Allison*, No. 201800251 (N-M. Ct. Crim. App. Feb. 8, 2019), https://www.jag.navy.mil/courts/documents/archive/2019/Allison Remand for New Post-Trial.pdf (unpublished order) [*Allison I*]; *United States v. Allison*, No. 201800251, 2020 CCA LEXIS 111 (N-M. Ct. Crim. App. Apr. 8, 2020) (unpublished order) [*Allison II*].

that review and resolve Appellant's post-trial delay claim, we begin our analysis by examining the case's procedural timeline.

On 23 April 2018, the court-martial adjourned. One hundred days later, on 1 August 2018, the convening authority took action on the case. Twenty-two days later, on 23 August 2018, the case was docketed with this Court.

Appellant submitted his case to the Court without assignment of error, but after reviewing the record, we ordered briefing on whether the letter of reprimand reproved Appellant for an offense the military judge had dismissed. The Government conceded the letter of reprimand's error and requested that we remand the case for new post-trial-processing. Accordingly, with the Parties' consent, we set aside the first Action and remanded for new post-trial processing on 8 February 2019.[3]

One hundred eighteen days later, on 6 June 2019, the convening authority took action for the second time. One hundred nine days after that, on 23 September 2019, the case was docketed with this Court for the second time.

Appellant again submitted his case to the Court without assignment of error. We again found error, this time for a material ambiguity in the new Action, and on 8 April 2020, we set aside the Action and remanded for new post-trial processing.[4]

Sixty-five days later, on 12 June 2020, the convening authority took action for the third time, disapproving the letter of reprimand but otherwise approving the remainder of the adjudged sentence. Twenty-six days after that, on 8 July 2020, the case was docketed with this Court for the third time.

Appellant, for the third time, submitted his case without assignment of error. In Appellant's brief, however, appellate defense counsel included this footnote:

---

[3] *Allison I.*

[4] *Allison II.* In *Allison II*, while Appellant initially submitted his case without assignment of error, he subsequently filed a motion for relief, complaining of multiple post-trial processing errors—unrelated to the ambiguity in the Action for which we ultimately ordered remand. In his motion, Appellant sought sentencing relief or, in the alternative, new post-trial processing. In light of our decision to remand for new post-trial processing, albeit for reasons unrelated to Appellant's complaints, we denied Appellant's motion without prejudice to raise any and all issues contained therein when the case returned to the Court for completion of appellate review.

> Undersigned counsel did not receive a copy of the new Conven-
> ing Authority's Action and therefore does not accept any inac-
> curacies or procedural violations it may contain. Should the
> Court identify any errors in the Convening Authority's Action,
> counsel requests an opportunity to submit a brief on said er-
> rors.[5]

We ordered appellate defense counsel to review the (third) Action and the
(third) SJAR, and inform the Court whether Appellant intended to raise any
assignments of error. In response, appellate defense counsel, on Appellant's
behalf, filed a brief and assignment of error asserting unreasonable post-trial
delay.

## II. DISCUSSION

We address two related but distinct issues when reviewing a claim of
unreasonable post-trial delay.[6] First, we review the claim for a due process
violation.[7] Second, we determine whether to grant relief for excessive post-
trial delay under our broad authority to determine sentence appropriateness
under Article 66, UCMJ.[8] We discuss each issue in turn.

### A. Due Process

Convicted servicemembers have a constitutional "due process right to
timely review and appeal of courts-martial convictions."[9] As a matter of law,
we review de novo whether an appellant has been denied his due process
right to a speedy appellate review.[10]

In *United States v. Moreno*, our superior court adopted the following four-
factor balancing test from *Barker v. Wingo*[11] to determine whether the post-

---

[5] Appellant's Br. of Sep. 10, 2020, at 2 n.1.

[6] *See United States v. Simon*, 64 M.J. 205 (C.A.A.F. 2006).

[7] *See* U.S. Const. amend. V; *Diaz v. Judge Advocate General of the Navy*, 59 M.J. 34, 38 (C.A.A.F. 2003).

[8] *See United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002).

[9] *United States v. Merritt*, 72 M.J. 483, 489 (C.A.A.F. 2013) (quoting *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006)); *see also Diaz*, 59 M.J. at 37–38.

[10] *United States v. Arriaga*, 70 M.J. 51, 55 (C.A.A.F. 2011) (citing *Moreno*, 63 M.J. at 135).

[11] 407 U.S. 514, 530 (1972).

trial delay constitutes a due process violation: "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice."[12] No single *Moreno* factor is required, but a facially unreasonable length of delay triggers the full due process analysis.[13] As our superior court explained:

> Once this due process analysis is triggered by a facially un-reasonable delay, the four factors are balanced, with no single factor being required to find that post-trial delay constitutes a due process violation.

> We analyze each factor and make a determination as to whether that factor favors the Government or the appellant. We then balance our analysis of the factors to determine whether there has been a due process violation. No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding.[14]

"If we conclude that an appellant has been denied the due process right to speedy post-trial review and appeal, we grant relief unless this court is convinced beyond a reasonable doubt that the constitutional error is harmless."[15]

As the Government concedes, the first factor—length of the delay—weighs in favor of Appellant. We presume delay is facially unreasonable whenever, *inter alia*, "the record of trial is not docketed by [this Court] within thirty days of the convening authority's action."[16] Here, a period of 109 days elapsed

---

[12] *Moreno*, 63 M.J. at 142. The *Moreno* timelines apply in full to this case because all trial stages were completed prior to the effective date of the Military Justice Act of 2016 (MJA 16), Pub. L. No. 114-328, § 5324, 130 Stat. 2000, 2927 (codified at 10 U.S.C. § 860c (2018)). MJA 16 mandated significant changes in the post-trial process and, in part, supplanted the continued viability of *Moreno's* timelines. *See United States v. Rivera*, ___ M.J. ___, No. 202000111, 2021 CCA LEXIS 418 (N-M Ct. Crim. App. Aug. 19, 2021) (holding MJA 16 superseded the *Moreno I and II* timelines but left untouched the *Moreno III* timeline, and also discussing new post-trial timelines as promulgated in Dep't of the Navy, Judge Advocate General / Cmdr. Navy Legal Service Cmd. Instr. 5814.1D, *Post-Trial Processing*, (Sep. 6, 2019)).

[13] *Moreno*, 63 M.J. at 136.

[14] *Id.* (citations omitted).

[15] *United States v. Allison*, 63 M.J. 365, 370 (C.A.A.F. 2006) (citation and internal quotation marks omitted).

[16] *Moreno*, 63 M.J. at 142.

between the second Action (6 June 2019) and the second docketing of the record at this Court (23 September 2019).[17] Because this delay is more than 3.5 times the presumptively reasonable 30-day limit, we find it facially unreasonable and undertake the full *Moreno* four-factor due process analysis.

The second factor—reasons for the delay—also favors Appellant, as the record provides no explanation for such a lengthy delay for an uncontested special court-martial that took only three and a half hours to complete and required only 91 transcribed pages in the record. The Government, citing *United States v. Wilson*,[18] argues this factor only "minimally favors Appellant" because there was no indication that the Government was engaging in deliberate delay to hamper the Defense.[19] We reject this argument because in *Wilson*, unlike here, the Government provided a detailed justification for the delay, to include "reasonable pretrial decisions and activities including potential immunity for other actors, the unit's pending deployment to Afghanistan, drug testing by USACIL [the United States Army Criminal Investigation Laboratory], and complicated pretrial negotiations."[20] In this case, by contrast, as the Government concedes, "the [r]ecord offers no reasonable explanation for the delay."[21]

The third factor examines whether an appellant asserted his right to a timely review and appeal. An appellant's assertion of his right to speedy post-trial review "is entitled to strong evidentiary weight in determining whether the [appellant] is being deprived of the right."[22] However, "the right to a speedy trial [and speedy appellate review] is unique in its uncertainty as to

---

[17] The Government met all other *Moreno* deadlines throughout the post-trial processing of this case including during the remands. Regarding *Moreno's* application to remands, we agree with our sister courts: "Although *Moreno* specifically dealt with initial post-trial processing, the same timeliness standards logically apply to cases returned by [appellate courts] for new post-trial processing." *United States v. Guzman*, 79 M.J. 856, 866 (C.G. Ct. Crim. App. 2020) (quoting *United States v. Turpiano*, No. ACM 38873 (f rev), 2019 CCA LEXIS 367, at *4 (A.F. Ct. Crim. App. Sept. 10, 2019) (unpublished), *review denied*, 80 M.J. 60 (C.A.A.F. 2020)).

[18] *United States v. Wilson*, 72 M.J. 347 (C.A.A.F. 2013).

[19] Answer at 11. While *Wilson* addresses the constitutional right to speedy trial as opposed to speedy appellate review, because both analyses rely upon the same four *Barker* factors, we consider it of precedential value to the instant issue.

[20] *See Wilson*, 72 M.J. at 353 (citations and internal quotations omitted.)

[21] Answer at 11.

[22] *Moreno*, 63 M.J. at 138 (citation omitted).

when and under what circumstances it must be asserted or may be deemed waived."[23] We conclude this factor weighs against Appellant, but only slightly.

The delay at issue occurred between 6 June 2019 (second Action) and 23 September 2019 (second docketing of the record). Appellant did not complain of post-trial delay in his clemency request of 27 April 2020 or in his initial *Allison III* pleading, which submitted his case without assignment of error. It was only after we ordered Appellant's counsel to review the third set of post-trial documents that Appellant filed his post-trial delay brief and assignment of error. Before then, the only other time he broached the subject of delay was during appellate round two (*Allison II*), when he filed a motion for relief from post-trial processing errors on 11 March 2020. Since then, the Government has complied with all pertinent *Moreno* deadlines.

Having resolved the first three *Moreno* factors, we turn now to the fourth factor of prejudice, which we assess "in light of the interests of those convicted of crimes to an appeal of their convictions unencumbered by excessive delay."[24] We consider three sub-factors in this assessment: "(1) prevention of oppressive incarceration pending appeal; (2) minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired."[25]

Oppressive incarceration is not at issue because Appellant was released from the brig before any colorable excessive post-trial delay occurred.[26] Retrial prejudice is moot because we find no grounds for a retrial, and Appellant asserts none. Similarly, we see no delay-related impairment to Appellant's ability to prevail during this appeal, and Appellant asserts none.

---

[23] *Barker*, 407 U.S. at 528–29.

[24] *Arriaga*, 70 M.J. at 57 (quoting *Moreno*, 63 M.J. at 138) (additional citation and internal quotation marks omitted).

[25] *Moreno*, 63 M.J. at 138–39 (quoting *Rheuark v. Shaw*, 628 F.2d 297, 303 n.8 (5th Cir. 1980)).

[26] Trial concluded on Apr. 23, 2018. Appellant was sentenced to eight months of confinement, with 89 days of pretrial confinement credit. That means Appellant would have been released from the brig sometime in late September 2018 (not accounting for any potential "good time" credit). The delay at issue did not begin until the date of the second Action, June 6, 2019 (beginning the 109 day clock between the second Action and the second docketing of the record at this Court).

Appellant instead asserts prejudice on the grounds that his chances to obtain employment have been impaired because he has been unable to obtain a Department of Defense Form 214 [DD-214], the certificate of release from active duty. Appellant argues that the excessive delay in the completion of appellate review has precluded issuance of his DD-214. Appellant reasons, and we agree, that he should not be forced to choose between his right to complete appellate review and the timely receipt of his DD-214. Therefore, we carefully analyze his claim of employment prejudice.

To establish prejudice "on the grounds that post-trial delay impaired an appellant's ability to secure employment, an appellant must do something more than provide his own affidavit asserting that a specific employer declined to hire him because he lacked a DD Form 214."[27] An appellant must provide some independent evidence to support his claim of employment prejudice.[28] "In most cases, the appropriate source of information pertaining to the hiring decisions of a potential employer will be a representative of the potential employer itself."[29] For example, in *Unites States v. Jones,* our superior court found excessive post-trial delay prejudiced the appellant's employment opportunities "where the appellant submitted the affidavits of three company officials stating that the appellant would have been considered for a position at the company if he had his DD Form 214."[30] By contrast, in *United States v. Allende*, the court rejected a claim of employment prejudice where the appellant failed to submit documentation from potential employers and relied solely on his own affidavit asserting several employers declined to consider him for employment.[31]

Here, Appellant submitted an unsworn declaration asserting that without a valid DD-214, he cannot obtain a California license as a "home improvement salesperson" and as a result "cannot engage in direct sales with customers, resulting in lost sales and revenue to him personally."[32] As

---

[27] *United States v. Bush*, 68 M.J. 96, 100 (C.A.A.F. 2009); s*ee also United States v. Allende*, 66 M.J. 142, 145 (CAAF 2008); *United States v. Jones*, 61 M.J. 80, 84–85 (C.A.A.F. 2005); *United States v. Jenkins*, 38 M.J. 287, 289 (C.M.A. 1993).

[28] *Bush*, 68 M.J at 100.

[29] *Id.* at 101.

[30] *Id.* (citing *Jones*, 61 M.J. at 84–85).

[31] *Allende*, 66 M.J. at 145.

[32] Appellant's Br. of Jan. 19, 2021 at 11 (citing Appellant's decl. of Jan. 14, 2021 at paras. 6–7).

supporting evidence, he attached a copy of a California "application for registration as a home improvement salesperson,"[33] which, he argues, demonstrates that his lack of a DD-214 prevented him from obtaining a home improvement salesperson license and therefore caused him to lose sales opportunities and severely limited his ability to pursue a livelihood.

However, Appellant misreads his own attachment. The California application for registration as a home improvement salesperson does not state that a DD-214 is required for approval, but merely notes that a DD-214 entitles a veteran to expedited processing of his application. More importantly, even this expedited processing is limited to *honorably discharged* veterans. According to Appellant's own documentation, his approved bad-conduct discharge, which we affirm, disqualifies him from any preferential treatment incident to his military service.

Appellant goes on to assert that he suffered constitutionally cognizable anxiety due to uncertainty concerning whether he will be able to obtain his home improvement salesperson license. He analogizes his anxiety to that of the *Moreno* appellant's anxiety at being forced to register as a sex offender and "living under an opprobrium of guilt" for an unreasonably long period before his conviction was eventually set aside.[34] However, this analogy is inapposite because, contra the *Moreno* appellant, Appellant has not made a sufficient showing that he experienced any "particularized anxiety" that is "distinguishable from normal anxiety experienced by prisoners awaiting an appellate decision."[35] Because we affirm Appellant's bad-conduct discharge, his circumstances with regard to the California licensure application are unaffected by the post-trial delay—he was not, and is not, entitled to any

---

[33] The Government opposed Appellant's motions to attach supplemental materials, arguing that our superior court's recent decision in *United States v. Jessie*, 79 M.J. 437 (C.A.A.F. 2020), foreclosed our authority to consider such extra-record materials. We granted Appellant's motions to attach the materials because, contrary to the Government's contention, *Jessie* empowers us to consider supplemental affidavits and similar materials when necessary to resolve issues that are "raised by materials in the record but not fully resolvable by those materials." *See id.* at 445. We find the materials in the Defense's attachments fit squarely within this category of issues. Were we not to consider such materials, the Defense would almost never be able to establish employment prejudice given the central role played by employer provided affidavits in successfully demonstrating employment prejudice. *See, e.g.*, *Bush, Allende, Jones, supra*.

[34] Appellant's Br. of Jan. 19, 2021 at 12.

[35] *See Moreno*, 63 M.J. at 139–40.

veteran's preference. Therefore, he cannot rely on the licensure issue as a source of delay-related anxiety.[36]

Consequently, we find Appellant has failed to demonstrate prejudice. Absent prejudice, we may find "a due process violation only when, in balancing the other three *Barker/Moreno* factors, the delay is so egregious that tolerating it would adversely affect the public's perception of fairness and integrity of the military justice system."[37] Applying this standard to the facts of this case, after balancing the *Barker/Moreno* factors, we do not find the delay so egregious as to constitute a due process violation.

## B. Article 66, UCMJ

We turn now to Article 66, UCMJ, which authorizes the Courts of Criminal Appeals "to grant relief for excessive post-trial delay without a showing of 'actual prejudice' within the meaning of Article 59(a)."[38] We must determine whether the findings and sentence "should be approved" based on the entire record, including the unexplained and unreasonable post-trial delay.[39]

In discharging our Article 66 responsibilities regarding post-trial delay, we consider the following non-exhaustive list of factors:

> (1) length of the delay;
>
> (2) the reason(s) for the delay;
>
> (3) the length and complexity of the record of trial and the number and complexity of potential appellate issues;

---

[36] *See Arriaga*, 70 M.J. at 58 (C.A.A.F. 2011) (finding anxiety concerning sex offender registration insufficient to establish prejudicial anxiety where appellant's appeal was unsuccessful and appellant remained convicted of sex crime); *see also Merritt*, 72 M.J. at 491 (same).

[37] *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

[38] *See Tardif*, 57 M.J. at 224 (citation omitted).

[39] *See id.*; *see also United States v. Brown*, 62 M.J. 602, 605 (N-M Ct. Crim. App. 2005). Concerning sentence relief for post-trial delay, the Military Justice Act of 2016 amended the UCMJ such that Article 66(d)(2), UCMJ, specifically invests the Courts of Criminal Appeals with authority to grant "appropriate relief" for error or excessive delay in court-martial processing after the Entry of Judgment. However, the statute does not apply in this case because the charges against Appellant were referred for trial on 10 April 2018, prior to the statute's effective date of 1 January 2019. *See* Exec. Order 13825, 83 Fed. Reg. 9889, section 3(d) (Mar. 1, 2018). Therefore, we leave for another day the contours of this statutory language.

(4) any evidence of bad faith or gross negligence on the part of the Government in the post-trial review process;

(5) whether the appellant has asserted the right to speedy review;

(6) whether the appellant has made any showing of harm resulting from the delay; and

(7) the offense(s) of which the appellant was found guilty and the sentence.[40]

Appellant's single-session special court-martial—requiring only 91 transcribed pages in the record—took less than three and a half hours to complete. The case generated no unusually complex or novel appellate issues. Yet somehow, the Government allowed 109 days to elapse between the (second) Action and the (second) docketing of the record with this Court—and all the Government needed to do was mail the record to the Court.

"Delays involving this essentially clerical task have been categorized as the least defensible of all post-trial delays."[41] The Government compounded this "least defensible" delay by failing to offer any explanation. Based on the post-trial documents, it appears that the cognizant government officials may not even have known about the delay. The (third) SJAR, *signed more than two years after trial*, advised that the (third) Action would be completed within 120 days of trial's conclusion. The (third) Action itself, *also signed more than two years after trial*, purported to confirm that "[t]his action was taken within 120 days of the completion of trial."[42] Such plainly incongruous language can only be attributed to the same over-reliance on stock templates and inattention to post-trial detail against which we have frequently admonished.[43]

---

[40] *Brown*, 62 M.J. at 606–07.

[41] *Moreno*, 63 M.J. at 137 (C.A.A.F. 2006) (quoting *United States v. Dunbar*, 31 M.J. 70, 73 (C.M.A. 1990) (internal quotation marks omitted)).

[42] Action dated 12 June 2020 at 3.

[43] *See Allison II. See also, e.g.*, *United States v. Gradiz*, No. 202000183, 2021 CCA LEXIS 167 (N-M. Ct. Crim. App. Apr. 7, 2021) (unpublished); *United States v. Norris*, No. 201900289, 2020 CCA LEXIS 139 (N-M. Ct. Crim. App. Apr. 30, 2020) (unpublished order); *United States v. Stromer*, No. 201800320, 2019 CCA LEXIS 134 (N-M. Ct. Crim. App. Mar. 26, 2019) (unpublished).

In the end, we are left with unreasonable and unexplained delay involving a simple, clerical task in an uncomplicated guilty plea case. All of this, we view in sharp relief against a backdrop of appellate proceedings that necessitated two remands and two-plus years of elapsed time before the case was even docketed (for the third time) for completion of appellate review. As our sister court declared, this kind of "[d]ilatory post-trial processing, without an acceptable explanation, is a denial of fundamental military justice."[44]

As such, we conclude sentence relief is required. However, in fashioning a suitable remedy, we must consider not just the nature of the Government's missteps but also the magnitude of Appellant's crimes—drug distribution and conspiracy to commit drug distribution in an overseas environment (Okinawa, Japan). We also take into consideration the absence of evidence of the Government's bad faith as well as Appellant's failure to show any particularized harm.

Therefore, to serve our twin objectives of granting necessary relief while avoiding an undeserved windfall, and after considering the entire record and unique facts of this case, we determine the appropriate remedy is to set aside the adjudged forfeiture of pay.[45] We leave undisturbed the reduction to E-1, confinement for eight months, and the bad-conduct discharge.

## III. CONCLUSION

After careful consideration of the record of trial and the parties' submissions, the adjudged forfeiture of $1,092 pay per month for eight months is **SET ASIDE**. After taking this remedial action, we conclude that the findings and so much of the sentence as provides for reduction to E-1, confinement for eight months, and a bad-conduct discharge are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights remains.[46]

The findings and the sentence as modified by this Court are **AFFIRMED**. All rights, privileges, and property of which Appellant has been deprived by virtue of that portion of the sentence set aside by this decision are ordered restored.

---

[44] *United States v. Bauerbach*, 55 M.J. 501, 507 (Army Ct. Crim. App. 2001).

[45] Appellant was sentenced to forfeiture of $1,092 pay per month for eight months.

[46] Articles 59 & 66, UCMJ.

Senior Judge GASTON and Judge STEWART concur.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court