UNITED STATES, Appellee

v.

Timothy L. MERRITT Sr., Master Sergeant
U.S. Air Force, Appellant

No. 13-0283

Crim. App. No. 37608

United States Court of Appeals for the Armed Forces

Argued September 17, 2013

Decided December 5, 2013

ERDMANN, J., delivered the opinion of the court, in which STUCKY
and RYAN, JJ., and EFFRON, S.J., joined.  BAKER, C.J., filed a
separate concurring opinion.

<u>Counsel</u>


For Appellant:  <u>William E. Cassara</u>, Esq. (argued); <u>Captain
Christopher D. James</u> (on brief).

For Appellee:  <u>Major Joseph Kubler</u> (argued); <u>Colonel Don M.
Christensen</u> and <u>Gerald R. Bruce</u>, Esq. (on brief).

Military Judge:  Jennifer L. Cline


**<u>This opinion is subject to revision before final publication</u>**.

Judge ERDMANN delivered the opinion of the court.

A military judge sitting as a general court-martial convicted Master Sergeant Timothy L. Merritt, contrary to his pleas, of one specification of wrongfully and knowingly receiving one or more visual depictions of minors engaging in sexually explicit conduct and one specification of wrongfully and knowingly viewing one or more visual depictions of minors engaging in sexually explicit conduct, in violation of Article 134, UCMJ, 10 U.S.C. § 934 (2006). The military judge merged the two specifications for sentencing purposes and sentenced Merritt to twenty-four months of confinement, reduction to E-2, and a bad-conduct discharge. The convening authority approved the adjudged sentence. The United States Air Force Court of Criminal Appeals affirmed the findings and sentence. United States v. Merritt, 71 M.J. 699, 708 (A.F. Ct. Crim. App. 2012).

"[A] servicemember must have fair notice that his conduct is punishable before he can be charged under Article 134 with a service discrediting offense." United States v. Vaughan, 58 M.J. 29, 31 (C.A.A.F. 2003) (quotation marks and brackets omitted). In addition, "[d]ue process entitles convicted servicemembers to a timely review and appeal of court-martial convictions." United States v. Moreno, 63 M.J. 129, 132 (C.A.A.F. 2006). We granted review of this case to determine: (1) whether Merritt had notice that the act of viewing child

2

pornography was conduct that could be prosecuted subject to criminal sanction; and (2) whether a delay of 1,024 days between the docketing of Merritt's appeal at the United States Air Force Court of Criminal Appeals (CCA) and the CCA's decision constituted a denial of his due process right to a speedy post-trial review.[1]  We hold that Merritt was not on notice that the act of viewing child pornography could be prosecuted and that Specification is set aside.  While the delay in processing Merritt's appeal was excessive, Merritt was not legally prejudiced by the delay and consequently he is not entitled to relief for appellate delay.

## Notice

### Background

In 2007, an investigation initiated by German authorities led the Air Force Office of Special Investigations (OSI),

---

[1] We granted review of the following issues:

I.   Whether Appellant's constitutional right to fair notice that an act is criminal was violated in Specification 2 of the Charge, where the alleged offense occurred in May 2006 but Congress did not criminalize the intentional viewing of child pornography until October 2008.

II.  Whether Appellant's due process right to timely appellate review was violated where the Air Force Court decided Appellant's case one thousand and twenty-four days after it was docketed.

United States v. Merritt, 72 M.J. 264 (C.A.A.F. 2013) (order granting review).

located at Spangdahlem Air Base, to question Merritt as to whether he had accessed child pornography on the Internet. Following a rights advisement, Merritt waived his rights and told agents that he had clicked on Internet ads for child pornography and viewed images of minors engaging in sexual activity. In a statement written for investigators, Merritt wrote, "I am deeply [a]shamed for having even looked at such images even out of curiosity. It is to great horror that have [sic] to recall these images that I tried so hard to forget seeing . . . ." Merritt's computer equipment was seized and a forensic examiner reviewed the data contained on Merritt's laptop and hard drives prior to the court-martial.

Merritt was charged with two specifications alleging violations of Article 134, UCMJ. The first Specification, which alleged that Merritt wrongfully and knowingly received child pornography, is not at issue in this appeal. The second Specification alleged that Merritt:

> [D]id, at or near Spangdahlem Air Base, Germany, on divers occasions between, on or about 6 May 2006, and on or about 13 May 2006, wrongfully and knowingly view one or more visual depictions of minors engaging in sexually explicit conduct, which conduct was prejudicial to good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

At Merritt's court-martial the defense filed a Motion to Dismiss Specification 2 of the Charge arguing that "[n]o offense of

4

'wrongful and knowing viewing' of such depictions is listed in the UCMJ, 10 USC §§ 877-934, (Punitive Articles), nor is such an offense enumerated under Article 134." The defense argued that there was no federal law, military case law, custom or usage which prohibited the mere viewing of child pornography in 2006.

In response to the motion, the government argued that it was well settled that conduct which is not criminal in a civilian setting could be criminalized in the military. The government cited this court's decision in United States v. Medina, 66 M.J. 21, 27 (C.A.A.F. 2008), in which we stated that "[i]t is intuitive that the viewing of child pornography discredits those who do it, as well as the institutions with which those persons are identified." Finally, the government cited Merritt's statement to OSI in which he wrote that he was ashamed of his conduct, as evidence that he undoubtedly knew that viewing child pornography was prohibited.

The military judge denied Merritt's motion to dismiss. The military judge ruled:

> [W]hen looking at the combination of and interplay between federal law, military law and custom, and state law, it is clear that the Accused had fair notice that the wrongful and knowing viewing of visual depictions of minors engaging in sexually explicit conduct, if shown to be prejudicial to good order and discipline and/or service discrediting, is criminal.

Consistent with the government's argument, the military judge relied on Medina and noted also that "viewing of these types of images has been subjected to criminal sanction in some states . . . and the Supreme Court has stated that states are authorized to criminalize the viewing of these types of images." The military judge found that a servicemember "would be on fair notice that knowing and intentional involvement with child pornography is a crime."

The military judge ultimately found Merritt guilty of viewing child pornography by exceptions to the service discrediting conduct. During sentencing, the government suggested that the maximum confinement for the charge was thirty years, based on twenty years of confinement for the receipt specification and ten years for the viewing specification. However, the military judge merged the two specifications for sentencing and applied a maximum sentence of twenty years, which was the maximum punishment for receipt of child pornography under the federal statute. Merritt was sentenced to twenty-four months of confinement, reduction to E-2, and a bad-conduct discharge.

On appeal to the CCA, Merritt argued that he was not on notice that viewing child pornography was criminalized by the UCMJ. Merritt, 71 M.J. at 704. The CCA found that Merritt "knew, or should have known" that his conduct was service

discrediting based on his statement that he was "deeply a shamed [sic] for having even looked at such images," and "[i]t is to great horror that [I] have to recall these images." Id. (first and third set of brackets in original). The CCA also found that military case law on possession of child pornography provided support for the conviction, reasoning "[w]e can find no logical distinction between the knowing possession and the viewing of such images with regard to the service discrediting nature of the act." Id. at 705.

Discussion

Before this court Merritt renews his argument that none of the sources identified by our decision in Vaughan, 58 M.J. at 31, provided him with notice that viewing child pornography was criminal in 2006. Specifically, he notes that the federal Child Pornography Prevention Act (CPPA), Pub. L. No. 104-208, 110 Stat. 3009, 3009-26 to 3009-31 (1996) (codified as amended at 18 U.S.C. §§ 2251-2260A (2006)), did not include the viewing of child pornography as a punishable offense in 2006. Merritt also asserts that the overwhelming majority of states have not criminalized the viewing of child pornography. In addition, he argues that military case law has not recognized the mere viewing of child pornography as a crime and, while military law has long recognized that possession of child pornography is criminal, there is no definable custom or usage regarding the

viewing of child pornography that would provide notice that it was a criminal offense.

In response, the government argues that state laws provided notice to Merritt, despite his duty station in Germany, that child pornography was widely criminalized long before 2006.  The government cites a number of state statutes which make "every conceivable route [Merritt] could take in order to intentionally view child pornography illegal by making actions like control, use, access, enter and receive subject to criminal sanction."  The government reasons that it is impossible to wrongfully view child pornography without committing one or several of the other criminal acts along the way, therefore Merritt surely had notice that viewing child pornography could subject him to criminal sanction.

Whether the military judge correctly understood and applied the proper legal principle in denying the motion to dismiss is a question we review de novo.  United States v. Saunders, 59 M.J. 1, 6 (C.A.A.F. 2003) (citing United States v. Hughes, 48 M.J. 214, 216 (C.A.A.F. 1998)).  "Article 134, UCMJ, the 'General Article,' criminalizes service-discrediting conduct by military service members."  Saunders, 59 M.J. at 6 (citing Manual for Courts-Martial, United States (2002 ed.) (MCM)).  Although "[c]ertain specified offenses are included under this Article," conduct that isn't listed in the MCM may nonetheless constitute

service discrediting conduct and "may be used to allege the offense."  Id. (quotation marks omitted).

"[A]s a matter of due process, a service member must have fair notice that his conduct [is] punishable before he can be charged under Article 134 with a service discrediting offense. This Court has found such notice in the MCM, federal law, state law, military case law, military custom and usage, and military regulations."  Vaughan, 58 M.J. at 31 (brackets in original) (citations and quotation marks omitted).

The UCMJ did not criminalize the viewing of child pornography at the time of the charged conduct in May of 2006.[2] Nor did the federal CPPA which criminalized the knowing transport, receipt, distribution, production, sale, or possession of child pornography.  See 18 U.S.C. § 2252 (2006).[3] "Viewing" child pornography was not included in this long list of punishable offenses related to child pornography.

In affirming Merritt's conviction, the CCA relied, in part, on decisions from the federal courts of appeals, writing, "various federal circuits have held that the act of viewing child pornography violated the [CPPA], even though viewing was not specifically listed in the statute until 2008."  Merritt, 71

---

[2] The MCM's current language criminalizes the viewing of child pornography.  MCM, pt. IV, para. 68b.b.(1) (2012 ed.).
[3] The 2008 amendment to 18 U.S.C. § 2252(a)(4)(B) did not criminalize "viewing" but rather criminalized "knowingly access[ing] with intent to view" child pornography.

M.J. at 705 (citing United States v. Pruitt, 638 F.3d 763, 766-67 (11th Cir. 2011); United States v. Bass, 411 F.3d 1198, 1201-02 (10th Cir. 2005)).  However, neither Pruitt nor Bass support the CCA's holding.[4]  In fact, we have found no federal court decision which interpreted the CPPA to criminalize the viewing of child pornography in 2006.

The CCA also relied on Merritt's statement that he was ashamed of looking at the images as "powerful evidence that [Merritt] was fully aware that viewing child pornography could call the Air Force into disrepute and thereby violate the UCMJ." Merritt, 71 M.J. at 704.  However, the fact that a servicemember may be ashamed of certain conduct is not sufficient by itself to equate to due process notice that the conduct was subject to criminal sanction.

The government argues that a number of state statutes which criminalized the "viewing" of child pornography adequately provided Merritt with notice.  The government urges the court to find that, taken together, the various state statutes put Merritt on notice of the "general criminality" of child

---

[4] Pruitt and Bass did not involve convictions for "viewing" child pornography.  While Pruitt referenced the "intentional viewer of child[]pornography," the case turned on the definition of "receipt," pursuant to the charged conduct.  Pruitt, 638 F.3d at 766-67.  In Bass the court relied on the Oxford English Dictionary's definition of "possession" to decide whether Bass had possession of child pornography despite the fact that there was no evidence that he actually viewed child pornography. Bass, 411 F.3d at 1201-02.

pornography. However, as the government's own research indicates, only a handful of states explicitly criminalized viewing child pornography in 2006.[5]

We previously concluded that, under appropriate circumstances, state statutes may provide fair notice of a possible Article 134 prosecution even when the servicemember is stationed outside the United States. See Vaughan, 58 M.J. at 32 ("The locus of the charged conduct does not change the measure of notice."). However, under the circumstances of this case, where the "viewing" of child pornography was not criminalized under the UCMJ, the MCM, military custom or usage, the comprehensive federal statutes, or the majority of state statutes, the fact that three states criminalized the conduct does not satisfy the constitutional requirement of fair notice.[6]

The government also argues a "general criminality" theory with respect to the treatment of child pornography in the military.[7] Underlying this argument is the government's theory

---

[5] Our review of the state statutes cited by the Government indicates that three states -- Arkansas, New Jersey, and Ohio -- explicitly criminalized "viewing" child pornography in 2006. Ark. Code Ann. § 5-27-304 (1991), N.J. Stat. Ann. § 2C:24-4 (West 2001), Ohio Rev. Code Ann. § 2907.323 (LexisNexis 1995).
[6] The number of states that may have criminalized certain conduct is not, by itself, determinative as to whether there is sufficient notice that the conduct is subject to criminal sanction. That determination is dependent on the facts of the particular case.
[7] Both the CCA and the government rely on the comment in Medina that "'[i]t is intuitive that the viewing of child pornography

11

that there is an aura of criminality surrounding child pornography which placed servicemembers on notice that any conduct involving child pornography constitutes criminal conduct even though that conduct was not criminalized by almost all traditional sources of due process notice.[8]  While actions related to viewing child pornography may well subject a servicemember to prosecution for violation of other criminal offenses involving child pornography (such as possession or transmission), it does not follow that conduct not otherwise prohibited becomes criminalized solely due to its proximity to the prohibited conduct.  In this case, the government's argument suggests that Merritt was on notice that there was an additional criminal act that occurred when he viewed the very same pictures that he was charged with possessing.

We decline to adopt such an amorphous standard and adhere to the traditional sources of notice set forth in Vaughan. Given that none of the Vaughan sources provided Merritt with notice in this case, we hold that he did not have sufficient

---

discredits those who do it, as well as the institutions with which the persons are identified.'"  Merritt, 71 M.J. at 705 (quoting Medina, 66 M.J. at 27).  Not only was Medina decided two years after the conduct at issue in this case, "intuition" is not a listed source of due process notice in Vaughan.
[8] "Since there was no way to wrongfully view without committing one or several of the other criminal acts along the way, Appellant had fair notice that viewing child pornography could subject him to criminal sanction by virtue of the predicate criminal acts."  Brief of Appellee at 7, United States v. Merritt, No. 13-0283 (C.A.A.F. July 1, 2013).

notice that the viewing of child pornography was subject to criminal sanction in 2006.  At that time, there was no federal statute or federal judicial decision interpreting federal law which prohibited the viewing of child pornography and only a few states even mentioned viewing in their respective child pornography statutes.  In addition, neither the MCM nor military courts interpreting its provisions gave notice that the act of viewing child pornography without more was prohibited in 2006 and the government has not established that such a prohibition was a custom or usage of the service.  The finding as to Specification 2 of the charge is set aside.

## Appellate Due Process

### Background

Merritt was sentenced on September 2, 2009 and the convening authority took action 139 days later on January 19, 2010.  The case was docketed at the CCA thirty-one days later on February 24, 2010.  Merritt's counsel was granted six enlargements of time in which to file his initial brief, which was ultimately filed on February 16, 2011, almost one year after docketing.  The government was granted four enlargements of time and filed its answer brief on August 11, 2011, nearly six months after the defense brief was filed.  Merritt was granted one enlargement of time for his reply brief, which was filed on August 25, 2011.

United States v. Merritt, No. 13-0283/AF

On August 10, 2012, while his appeal was pending before the CCA, Merritt filed a Motion for Leave to File Supplemental Assignment of Error and a Motion for Expedited Review. Merritt argued that expedited review was necessary because the case "languished for 29 months, 11 months past the [18-month] time limit set in Moreno." See Moreno, 63 M.J. at 142. The motion was filed over two years after the case was docketed at the CCA on February 24, 2010. The CCA summarily denied the Motion for Expedited Review on August 17, 2012.[9] On September 5, 2012, Merritt filed a Petition for Extraordinary Relief in the Nature of a Writ of Mandamus seeking similar relief from this court, which was denied on October 11, 2012. United States v. Merritt, 71 M.J. 440 (C.A.A.F. 2012) (summary disposition).

The CCA issued its decision in Merritt's case on December 14, 2012, 1,024 days after docketing. In disposing of Merritt's appellate delay claim, the CCA assumed error but summarily concluded that it was harmless beyond a reasonable doubt. Citing United States v. Allison, 63 M.J. 365, 370 (C.A.A.F. 2006), the CCA held it was unnecessary to engage in an analysis of the Moreno factors for the adjudication of post-trial appellate delay. Merritt, 71 M.J. at 708.

---

[9] The CCA granted Merritt's Motion for Leave to File Supplemental Assignment of Error on August 29, 2012, and addressed the appellate delay issue in its opinion. Merritt, 71 M.J. at 708.

14

United States v. Merritt, No. 13-0283/AF

Discussion

"This court has recognized that convicted servicemembers have a due process right to timely review and appeal of courts-martial convictions." Moreno, 63 M.J. at 135. We employ a four-factor test to review claims of unreasonable post-trial delay, evaluating (1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice. Id. "Once this due process analysis is triggered by a facially unreasonable delay, the four factors are balanced, with no single factor being required to find that post-trial delay constitutes a due process violation." Id. at 136.

(1) Length of the Delay

"[U]nless the delay is facially unreasonable, the full due process analysis will not be triggered." Id. The CCA found the delay facially unreasonable and the government concedes in its brief that the delay in Merritt's case triggers the full four-part analysis. Merritt, 71 M.J. at 708. "[I]f the constitutional inquiry has been triggered, the length of delay is itself balanced with the other factors and may, in extreme circumstances, give rise to a strong presumption of evidentiary prejudice affecting the fourth Barker [v. Wingo, 467 U.S. 514 (1972)] factor." United States v. Toohey, 60 M.J. 100, 102 (C.A.A.F. 2004) (quotation marks omitted). The length of delay

15

calculation "includes time caused by failures of appointed counsel and delays by the court itself." Id. (brackets and quotation marks omitted). The delay in Merritt's case is facially unreasonable and we proceed to the analysis of the remaining three factors.

(2)  Reasons for the Delay

"Under this factor we look at the Government's responsibility for the delay, as well as any legitimate reasons for the delay, including those attributable to an appellant." Moreno, 63 M.J. at 136. The court will "examine each stage of the post-trial period because the reasons for the delay may be different at each stage and different parties are responsible for the timely completion of each segment." Id.

In considering this factor, we have declined to attribute to individual appellants the periods of appellate delay resulting from military appellate defense counsels' requests for enlargements of time where the basis for the request is excessive workload. Diaz v. Judge Advocate General of the Navy, 59 M.J. 34, 38 (C.A.A.F. 2003) ("Appellate counsel caseloads are a result of management and administrative priorities and as such are subject to the administrative control of the Government. To allow caseloads to become a factor in determining whether appellate delay is excessive would allow administrative factors to trump the Article 66 and due process rights of appellants.");

16

see also Moreno, 63 M.J. at 137. In this case, however, Merritt was represented by civilian counsel and the government opposed his requests for enlargement. As a result, the appellate filing delays requested by appellate defense counsel are attributable to Merritt.[10]

The six enlargements of time granted to Merritt's counsel amounted to 357 days between the docketing of his case and the filing of his initial brief. Following the filing of that brief, the government appellate division sought five enlargements of time to file the answer brief and one enlargement to file an answer to the supplemental issue. The government concedes that it is responsible for the 228-day delay encompassed by the six enlargements of time.

Before this court, Merritt focuses on the 351-day delay between the submission of his reply brief and the filing of his Motion for Expedited Review. He argues that this period is nearly twice the "allowance" this court established in Moreno and the CCA provided no reason for its delay. Although "[w]e [ . . . ] apply a more flexible review of this period, recognizing that it involves the exercise of the Court of Criminal Appeals['] judicial decision-making authority," Moreno, 63 M.J. at 137, lengthy delays at the CCA are particularly

---

[10] The requests for enlargement of time indicated that Merritt agreed with the requests.

17

problematic given that the CCA is "directly responsible for exercising institutional vigilance over [all] cases pending Article 66 review." Diaz, 59 M.J. at 40 (quotation marks omitted).

Merritt misreads Moreno when he argues that case established a six-month standard in which the CCA should decide a case after the briefing is complete. In Moreno we considered the circumstances of that case and stated that "a period of slightly over six months is not an unreasonable time for review by the Court of Criminal Appeals." 63 M.J. at 137-38. While we did not establish a firm standard, we noted earlier in Moreno that "[u]ltimately the timely management and disposition of cases docketed at the Court of Criminal Appeals is a responsibility of the Courts of Criminal Appeals." Id. at 137.

The lengthy briefing period of over a year and a half, as well as the time taken by the CCA to decide this case, are troubling. As we stated in Diaz, this is partially because:

> Unlike the civilian criminal justice system, the Courts of Criminal Appeals have unique fact finding authority, and that aspect of a servicemember's case is not concluded until that review is completed. The nature of this review calls for, if anything, even greater diligence and timeliness than is found in the civilian system.

Diaz, 59 M.J. at 38. Given the delays in this case, and the lack of institutional vigilance by the Air Force CCA, this factor weighs in Merritt's favor.

18

United States v. Merritt, No. 13-0283/AF

### (3)  Assertion of Right to Timely Review

"This factor calls upon [the court] to examine an aspect of [Appellant's] role in this delay."  Moreno, 63 M.J. at 138. Merritt argues that he not only filed a supplemental issue relating to post-trial delay but also filed a writ of mandamus seeking relief from this court.  As we have noted, Merritt filed the motion after his counsel requested six enlargements of time and after the case languished at the CCA for over two years. Thus, Merritt's assertion of this right was not timely and this factor weighs slightly against him.  See United States v. Othuru, 65 M.J. 375, 380 (C.A.A.F. 2007).

### (4)  Prejudice

> Prejudice should be assessed in light of the interests of those convicted of crimes to an appeal of their convictions unencumbered by excessive delay.  [There are] three similar interests for prompt appeals:  (1) prevention of oppressive incarceration pending appeal; (2) minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired.

Moreno, 63 M.J. at 138-39 (quoting Rheuark v. Shaw, 628 F.2d 297, 203 n.9 (5th Cir. 1980)).  We review each of the three prejudice subfactors in turn.

### a.  Prevention of Oppressive Incarceration

Merritt was incarcerated on September 3, 2009, and his appeal was docketed with the CCA on February 24, 2010.

19

According to Merritt's Motion for Expedited Review, he was released from confinement on appellate leave in April 2011, four months before his counsel filed his reply brief.

As we explained in Moreno:

[The oppressive incarceration pending appeal] sub-factor is directly related to the success or failure of an appellant's substantive appeal.  If the substantive grounds for the appeal are not meritorious, an appellant is in no worse position due to the delay, even though it may have been excessive. . . . . However, if an appellant's substantive appeal is meritorious and the appellant has been incarcerated during the appeal period, the incarceration may have been oppressive.

Id. at 139 (citations omitted).

Because Merritt has prevailed on his substantive appellate issue, we must determine whether his incarceration was oppressive.  While we have set aside the "viewing" of child pornography specification, Merritt remains convicted of "receiving" child pornography.  During his sentencing, Merritt's counsel argued that the two specifications should be considered multiplicious for sentencing purposes.  The military judge agreed, stating:

Based on the facts in this case I am going to combine the two charges for sentencing.  The maximum punishment is 20 years, which comes from the maximum punishment for receipt from the Federal law, in addition to the dishonorable discharge, reduction in rank to E-1, and total forfeiture of all pay and allowances.

20

Since the military judge merged the two charges for sentencing purposes, we are satisfied that Merritt's sentence would have been the same had he only been charged with "receiving" child pornography and therefore he is in "no worse position due to the delay even though it may have been excessive."  Id.

Merritt also argues that he was prejudiced under this subfactor because he lost retirement income while his case was being reviewed by the CCA.  Lost pay, though surely a concern for any servicemember on appeal, does not bear on the consideration of whether Merritt suffered from oppressive incarceration.  Therefore, even though his substantive appeal was successful, Merritt suffered no prejudice as a result of oppressive incarceration.

　　b.  Minimization of Anxiety and Concern

As to this subfactor, we require:

> an appellant to show particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision.  This particularized anxiety or concern is thus related to the timeliness of the appeal, requires an appellant to demonstrate a nexus to the processing of his appellate review, and ultimately assists this court to "fashion relief in such a way as to compensate [an appellant] for the particular harm."

Id. at 140 (brackets in original).

Merritt argues that he suffered anxiety after registering as a sex offender following his release from confinement and also due to lost retirement income.  Merritt claims these

21

concerns raised his anxiety above the normal anxiety experienced by defendants awaiting the outcome of an appeal.

While Merritt's anxiety over sex offender registration is understandable, he has not made a strong case that he experienced the "particularized anxiety" that is "distinguishable from normal anxiety experienced by prisoners awaiting an appellate decision." See Moreno, 63 M.J. at 139-40. Because Merritt remains convicted of receiving child pornography, he would be required to register as a sex offender upon release from confinement regardless of any delay. See United States v. Arriaga, 70 M.J. 51, 58 (C.A.A.F. 2011). Therefore, Merritt cannot rely on the sex offender registration as cause for anxiety and concern related to the delay. Finally, similar to our discussion under the "oppressive incarceration" subfactor, loss of retirement income, while a concern for any servicemember on appeal, does not constitute "particularized anxiety" under this subfactor.

c. Impairment of Ability to Present a Defense at a Rehearing

Merritt argues that if he is successful on his substantive issue, the delay at the CCA could have a negative impact on his ability to prepare for a rehearing given the passage of time and availability of witnesses. As we have set aside the finding on the "viewing" charge for lack of due process notice, there can

22

be no rehearing on that charge. Thus, Merritt cannot demonstrate prejudice by arguing an inability to prepare for retrial.

(5)  Summary -- Appellate Delay

While we find the length of appellate delay was clearly unreasonable and the trend of delay at the Air Force CCA is troublesome, in this case Merritt has not shown that he was prejudiced by the appellate delay and consequently he is not entitled to relief on this issue. See Othuru, 65 M.J. at 380 (finding "no good cause" for lengthy appellate delay, but holding that there was no basis for a finding of prejudice).

DECISION

The finding as to Specification 2 of the Charge (viewing child pornography) is set aside and that Specification is dismissed. Because the military judge merged Specifications 1 and 2 for sentencing and relied on the maximum punishment for a finding of guilty to Specification 1 (receipt of child pornography), we are confident that Merritt would not have received a lesser sentence if the military judge had dismissed Specification 2. See United States v. Custis, 65 M.J. 366, 372 (C.A.A.F. 2007). The decision of the United States Air Force Court of Criminal Appeals with respect to Specification 1 of the Charge (receipt of child pornography) and the sentence are affirmed.

United States v. Merritt, No. 13-0283/AF

BAKER, Chief Judge (concurring):

On Issue I, I would reach the same result, but on narrower grounds, addressed to the specific circumstances of this case. When charged in tandem with a possession count for the exact same child pornography, I would agree that Appellant was not on fair notice that he may have committed an additional crime by viewing the very same pictures he was charged with possessing.

I also agree that those factors specifically delineated in United States v. Vaughan -- the Manual for Courts-Martial, United States, case law, federal or state law, and military regulations -- do not give notice that viewing child pornography could be charged as a separate crime. United States v. Vaughan, 58 M.J. 29, 31 (C.A.A.F. 2003). However, the Vaughan factors do not provide an exhaustive list and meeting those factors is not the only avenue through which a party could receive fair notice as to the criminality of an offense under Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2012). I would not rule out the possibility that, under certain circumstances, other factors including the elements, custom and common sense could have put a reasonable servicemember on notice that viewing child pornography was of a nature to be service discrediting, especially where viewing involved actions akin to the possession of child pornography. The notice problem in this case is that Appellant was charged with possessing and viewing

the same child pornography, and in that context, he was not on notice as to what distinct criminal conduct was included within the viewing specification that was not subsumed within or implied by the possession specification.