# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 40134**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Zachary C. ROCHA**
Airman (E-2), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 16 December 2022

———————————

*Military Judge*: Colin P. Eichenberger.

*Sentence*: Sentence adjudged 19 March 2021 by GCM convened at Mountain Home Air Force Base, Idaho. Sentence entered by military judge on 3 May 2021: Bad-conduct discharge, confinement for 90 days, forfeiture of all pay and allowances, and reduction to E-1.

*For Appellant:* Lieutenant Colonel Todd J. Fanniff, USAF; Major Spencer R. Nelson, USAF.

*For Appellee*: Lieutenant Colonel Thomas J. Alford, USAF; Lieutenant Colonel Matthew J. Neil, USAF; Major Cortland T. Bobczynski, USAF; Major John P. Patera, USAF; Major Brittany M. Speirs, USAF; Mary Ellen Payne, Esquire.

Before POSCH, RICHARDSON, and CADOTTE, *Appellate Military Judges*.

Judge RICHARDSON delivered the opinion of the court, in which Judge CADOTTE joined. Senior Judge POSCH filed a separate dissenting opinion.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

RICHARDSON, Judge:

A general court-martial comprised of officer members convicted Appellant, contrary to his pleas, of one specification of indecent conduct—engaging in sexual acts with a sex doll with the physical characteristics of a female child—in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934.[1] Appellant was found not guilty of an unrelated specification of receiving child pornography between May 2018 and May 2019 in violation of Article 134, UCMJ, 10 U.S.C. § 934 (*Manual for Courts-Martial, United States* (2016 ed.)).[2] The military judge sentenced Appellant to a bad-conduct discharge, 90 days of confinement, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority denied Appellant's request for waiver of forfeitures, and approved the sentence in its entirety.

Appellant raises several assignments of error, asserting: (1) private masturbation with a doll is constitutionally protected conduct; (2) Appellant did not have fair notice that private masturbation with a doll was subject to criminal sanction; (3) the military judge erred in denying the Defense's motion to dismiss for failure to state an offense; (4) trial defense counsel was ineffective; and (5) Appellant's conviction is not legally and factually sufficient. Additionally, Appellant asserts: (6) the Government cannot meet its burden to prove that the military judge's failure to instruct the panel that a guilty verdict must be unanimous was harmless beyond a reasonable doubt; (7) trial defense counsel was ineffective for failing to ask two panel members questions regarding their experience and ability to sit in Appellant's court-martial; and (8) trial counsel engaged in prosecutorial misconduct in findings argument.[3] Because we find in Appellant's favor on issue (2), we do not address the remaining issues.

---

[1] Unless otherwise noted, all references in this opinion to the UCMJ and Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.) (*MCM*).

[2] Based on the date of this alleged offense, at arraignment Appellant was given a choice of sentencing rules, and elected to be sentenced under the rules effective for offenses committed on or after 1 January 2019. *See* R.C.M. 902A(b). After findings, Appellant chose to be sentenced by the military judge.

[3] Appellant personally raises issues (6)–(8) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

## I. BACKGROUND

Appellant purchased online a short[4] silicone doll with female physical characteristics, including oral, anal, and vaginal orifices and small breasts.[5] Appellant had the doll shipped to another Airman's house; Appellant lived on base and could not receive the package at his on-base postal box. Appellant also purchased clothing for the doll.

About three weeks after Appellant received the doll, Appellant's commander ordered an inspection of the dorms, including Appellant's dorm room. Command representatives received a briefing from agents from the Air Force Office of Special Investigations (AFOSI) before beginning their inspection. Appellant shared a kitchen and bathroom with another Airman, but had his own separate bedroom. A sergeant entered Appellant's bedroom to inspect it, and saw something on the bed. She called over to Appellant's first sergeant, who saw "a very life like doll on the bed." Near the clothed doll were two body pillows, each with a female anime character on the pillowcase. Unsure what to do upon seeing the doll, they asked for assistance from AFOSI agents. Special Agent (SA) JL arrived in response, and entered Appellant's room. He "saw a doll that scared [him] because it kind of looked like a child." SA JL testified, "Once I kind of realized that it was not a real person, I started making phone calls immediately because it was kind of something outside of the realm that I've encountered before." One of his calls was to the legal office.

Soon thereafter, SA JL and another AFOSI agent interviewed Appellant. They informed Appellant of his rights under Article 31, UCMJ, 10 U.S.C. § 831, and specifically that he was suspected of the "offense of Article 134, child pornography;" the agents did not mention the offense of indecent conduct. Appellant agreed to speak with the AFOSI agents. As the AFOSI agents began to question Appellant about the doll, Appellant said that recently he has "started to realize that if somebody sees [the doll] in [his] room then they're going to get some weird idea." Appellant admitted he would "like to be open, more open about this kind of stuff," and warned agents that he talks "about some weird stuff." Several times during the interview, Appellant stated he was "uncomfortable" talking about the doll.

In his interview with the agents, Appellant agreed the doll looked like a child. He explained that a larger doll would not fit well in his small dorm room,

---

[4] Witnesses described the doll as being between one-and-a-half and four feet tall. It appears from photographs in the record that the doll was on the taller side of this range.

[5] We make no finding concerning whether the doll was a representation of a child.

and would be more difficult to move around. Appellant explained how he benefitted emotionally from the doll. For example, he said to agents that after the box with the doll arrived: "I opened it up and dressed it up and we started talking. You know it wasn't an especially great day that day, so it helped a lot actually, and it was a lot easier than talking to my pillows because you know anime isn't real." Appellant named the doll Adele. He interacted with the doll in many ways, such as washing and applying baby powder to it, sitting it in a chair with a blanket or a book, and changing its clothes. Appellant denied taking the doll out of his dorm room.

Appellant admitted to owning "basically what is a child sex doll." Appellant told the agents that on three occasions in his bedroom, he masturbated using the anal or vaginal orifice of the doll but did not ejaculate in it. Each time, Appellant started to think, "[W]hat if this was a life, what if this was real," so he stopped his sexual activity with it. When asked whether he ever was "picturing Adele as real" and was "in to it," Appellant answered, "Real as in, like, a real child, somebody's daughter[?] No. No." Appellant denied having any sexual interest in children.

## II. DISCUSSION

### A. Additional Background

Specification 2 of the Charge alleged Appellant did:

> [O]n divers occasions between on or about 24 April 2019 and on or about 20 May 2019, commit indecent conduct, to wit: engaging in sexual acts with a sex doll with the physical characteristics of a female child, and that said conduct was of a nature to bring discredit upon the armed forces.

Shortly after arraignment, the military judge summarized an issue raised regarding this specification:

> MJ [Military Judge]: Defense counsel, I know you have not submitted any pretrial filings alleging that that particular specification or any specification failed to state an offense; however I would like to ensure that if this is an issue that you intend to raise, we do so now. Do you object to Specification 2 as failing to state an offense?
>
> DC [Defense Counsel]: Yes, Sir.

Trial defense counsel moved for the specification to be dismissed with prejudice for failure to state an offense. The basis of her argument was that Appellant had a constitutional liberty interest in his wholly private sexual activity,

and no aggravating factor divested him of that interest.[6] While the "motion [was] made pursuant to the Fifth Amendment and Sixth Amendment to the United States Constitution[7]; [R.C.M.] 905(b)(2) and 307(c)(3); and applicable case law," trial defense counsel did not specifically assert a lack of constitutionally required fair notice that Appellant's conduct was criminal. However, she did make the following related arguments:

> So, this is not the same conduct that the law and case law supports as being criminal. It doesn't fulfill the elements that -- and the proffered evidence that supports the aggravating circumstance is insufficient to criminalize this kind of conduct.
>
> . . . .
>
> The specification lacks aggravating circumstances to support a finding as a matter of law. The evidence in this case supports that [Appellant] was not open and notorious as an aggravating circumstance. The only aggravation present with masturbation would be if someone witnessed it. Here, no one witnessed it and [Appellant] was reluctant to even discuss the activity with law enforcement.
>
> . . . .
>
> If the Government's charging scheme here is sufficient, then they could simply charge any conduct as indecent no matter how private and no matter whether the sexual nature of the conduct

---

[6] In *Lawrence v. Texas*, 539 U.S. 558, 578 (2003), the United States Supreme Court held that consensual sexual acts, specifically, sodomy involving two adults, was protected under the United States Constitution. It highlighted the absence of aggravating factors: (1) minors; (2) persons who might be injured or coerced, or who were in a situation where consent might not be easily refused; and (3) public conduct or prostitution. *Id.* The *Lawrence* liberty interest applies in the military context. "In *United States v. Marcum*, consistent with the Supreme Court's holding in *Lawrence v. Texas . . .* , this Court recognized that . . . wholly private, consensual sexual activity between adults otherwise proscribed by Article 125, UCMJ, is constitutionally protected." *United States v. Castellano*, 72 M.J. 217, 218 (C.A.A.F. 2013) (citing *United States v. Marcum*, 60 M.J. 198, 206 (C.A.A.F. 2004)) (additional citation omitted); *see also United States v. Goings*, 72 M.J. 202, 206 (C.A.A.F. 2013) ("In *Lawrence*, the focal point of the constitutional protection involved an act of sexual intimacy between two individuals in a wholly private setting without more. *Lawrence* did not establish a presumptive constitutional protection for all offenses arising in the context of sexual activity.").

[7] U.S. CONST. amend. V, VI.

is otherwise illegal. The offense as alleged does not meet the requirement for aggravation, and therefore, does not state an offense.

The military judge denied the defense motion.[8] He found "that the Defense [ ] failed to meet their burden to show [S]pecification 2 of the [C]harge fails to state an offense." The military judge cited *United States v. Dear*, 40 M.J. 196, 197 (C.M.A. 1994), then found that the specification alleged the essential elements of the offense, provided notice of the charge, and provided protection against double jeopardy. With respect to the second prong, the military judge found "the specification provides notice to [Appellant] of the charge, namely that he engaged in indecent conduct by engaging in sexual acts with a sex doll with the physical characteristics of a female child."

## B. Law

### 1. Elements

"[A]ll disorders and neglects to the prejudice of good order and discipline in the armed forces, all conduct of a nature to bring discredit upon the armed forces, and crimes and offenses not capital" are punishable at trial by court-martial. Article 134, UCMJ, 10 U.S.C. § 934. The elements of an Article 134, UCMJ, offense for service-discrediting conduct are "(a) that the accused did or failed to do certain acts, and (b) that, under the circumstances, the accused's conduct was of a nature to bring discredit upon the armed forces." *Manual for Courts-Martial, United States* (2019 ed.) (*MCM*), pt. IV, ¶ 91.b.(2). "'Discredit' means to injure the reputation of." *MCM*, pt. IV, ¶ 91.c.(3). The service-discrediting clause of "Article 134 makes punishable conduct which has a tendency to bring the service into disrepute or which tends to lower it in public esteem." *Id.*

The President enumerated the offense of Indecent Conduct under Article 134, UCMJ, and listed elements, which, relevant to this case, include: (1) the accused engaged in certain conduct, (2) the conduct was indecent, and (3) that, under the circumstances, the conduct was of a nature to bring discredit upon the armed forces. *MCM*, pt. IV, ¶ 104.b.(1)–(3). "'Indecent' means that form of immorality relating to sexual impurity which is grossly vulgar, obscene, and repugnant to common propriety, and tends to excite sexual desire or deprave morals with respect to sexual relations." *MCM*, pt. IV, ¶ 104.c.(1). The President did not describe any particular conduct that would meet this definition.

---

[8] This ruling is the subject of Appellant's third assignment of error. The military judge analyzed whether Appellant was on notice of the charges against him, and not whether he was on fair notice that the alleged conduct was criminal.

The elements of Specification 2 of the Charge in this case include (1) Appellant engaged in conduct, to wit: engaging in sexual acts with a sex doll with the physical characteristics of a female child, (2) the conduct was indecent, and (3) that said conduct was of a nature to bring discredit upon the armed forces.

### 2. Standard of Review

We review de novo a claim that an appellant lacked fair notice that his conduct was punishable under Article 134, UCMJ. *See United States v. Saunders*, 59 M.J. 1, 6–9 (C.A.A.F. 2003).

When a litigant makes a constitutional claim at the trial level but presents a new argument for the first time on appeal in support of that claim, we do not consider the claim forfeited. *See generally Citizens United v. Federal Election Commission*, 558 U.S. 310, 330–31 (2010) (analyzing a First Amendment[9] claim, and stating that once a federal claim is properly presented, a litigant on appeal is not limited to the precise argument made below).

### 3. Due Process Notice

Constitutional "[d]ue process requires 'fair notice' that an act is forbidden and subject to criminal sanction" before a person can be prosecuted for committing that act. *United States v. Vaughan*, 58 M.J. 29, 31 (C.A.A.F. 2003) (quoting *United States v. Bivins*, 49 M.J. 328, 330 (C.A.A.F. 1998)). "The test for constitutional notice that conduct is subject to criminal sanction is one of law[; i]t does not turn on whether we approve or disapprove of the conduct in question." *United States v. Warner*, 73 M.J. 1, 3 (C.A.A.F. 2013). "The 'void-for-vagueness' doctrine requires the criminal activity to be defined with sufficient clarity such that 'ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'" *United States v. Caporale*, 73 M.J. 501, 504 (A.F. Ct. Crim. App. 2013) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)). "While the due process concepts of fair notice and vagueness are related, [ ] we need not decide whether a specification is unconstitutionally vague where, as here, [the a]ppellant lacked fair notice that the alleged conduct was forbidden." *Warner*, 73 M.J. at 3 n.2 (citing *Parker v. Levy*, 417 U.S. 733, 757 (1974)). An enumerated Article 134, UCMJ, offense which is not void for vagueness does not necessarily provide constitutionally required fair notice that certain conduct is prohibited.[10]

---

[9] U.S. CONST. amend. I.

[10] On this point, we find the United States Supreme Court's discussion regarding Articles 133 and 134, UCMJ, apt:

"The primary obstacle to prosecuting a servicemember under [Article 134, UCMJ,] is that the servicemember must be on 'fair notice' that his conduct was punishable under the Uniform Code." *Bivins*, 49 M.J. at 330 (quoting *Parker*, 417 U.S. at 756). Fair notice can come from "the [*Manual for Courts-Martial*], federal law, state law, military case law, military custom and usage, and military regulations." *Vaughan*, 58 M.J. at 31 (citations omitted). Accordingly, a servicemember may be prosecuted for service-discrediting conduct "even if the conduct is not specifically listed in the *Manual for Courts-Martial*." *Warner*, 73 M.J. at 3 (citing *Saunders*, 59 M.J. at 6).

In *United States v. Merritt*, the United States Court of Appeals for the Armed Forces (CAAF) considered whether the appellant was on fair notice that his conduct—viewing child pornography—alleged in violation of Clauses 1 and 2 of Article 134, UCMJ, was criminal. 72 M.J. 483 (C.A.A.F. 2013). The CAAF noted that during the charged time frame, "the 'viewing' of child pornography was not criminalized under the UCMJ, the *MCM*, military custom or usage, the comprehensive federal statutes, or the majority of state statutes." *Id.* at 488. The CAAF found that none of the *Vaughan* sources provided the appellant with notice in that case, and found the appellant lacked sufficient notice the viewing of child pornography was subject to criminal sanction in 2006. *Id.* The CAAF set aside the finding of guilty to that specification. *Id.* at 492.

The day after it decided *Merritt*, the CAAF decided *Warner*. *Warner*, 73 M.J. at 1. In *Warner*, the CAAF considered whether the appellant was on fair notice that his conduct—charged as possessing images of "child erotica"—alleged in violation of Clauses 1 and 2 of Article 134, UCMJ, was criminal. *Id.* at 2. The court found:

> Simply put, although child pornography is a highly regulated area of criminal law, no prohibition against possession of images of minors that are sexually suggestive but do not depict nudity

---

It would be idle to pretend that there are not areas within the general confines of the articles' language which have been left vague despite these narrowing [judicial and executive] constructions. But even though sizable areas of uncertainty as to the coverage of the articles may remain after their official interpretation by authoritative military sources, further content may be supplied even in these areas by less formalized custom and usage.

*Parker*, 417 U.S. at 754 (citation omitted); *see also Vaughan*, 58 M.J. at 31 (relying on *Parker* in its discussion of sources of fair notice) (discussed *infra*).

or otherwise reach the federal definition of child pornography[11] exists in any of the potential sources of fair notice set out in *Vaughan* and available to [the a]ppellant. It follows that the [a]ppellant received no such notice.

*Id.* at 4. The CAAF found plain error and dismissed the specification. *Id.*

**4. Indecency**

When the offense of "indecent acts with another" was enumerated under Article 134, UCMJ, prior to 2007, it required as an element that the wrongful act be "with a certain person." *Manual for Courts-Martial, United States* (2005 ed.), pt. IV, ¶ 90.b(1)–(2). "This required the wrongful act be 'done in conjunction or participating with another person' and be an 'affirmative interaction' with the victim being more than an inadvertent or passive observer." *United States v. Burkhart*, 72 M.J. 590, 596 n.4 (A.F. Ct. Crim. App. 2013) (quoting *United States v. Miller*, 67 M.J. 87, 91 (C.A.A.F. 2008)).

In 2007, the President eliminated "indecent acts with another" as an enumerated offense under Article 134, UCMJ, when the offense of "indecent act" became punishable under Article 120, UCMJ, 10 U.S.C. § 920. *See* Exec. Order 13,447, 72 Fed. Reg. 56,179, 56,191 (2 Oct. 2007); *Manual for Courts-Martial, United States* (2012 ed.) (2012 *MCM*), App. 28, at A28-2. After another shift almost a decade later, "indecent acts" was removed from Article 120, UCMJ, and the President enumerated the offense of "indecent acts" under Article 134, UCMJ. *See* Exec. Order 13,740, 81 Fed. Reg. 65,175, 65,261–62 (22 Sep. 2016); *MCM*, pt. IV, ¶ 104.c.(2). As was the case when it was included in Article 120, UCMJ, the text of the offense did not include language that the indecent conduct be committed in "the presence of another person." *MCM*, pt. IV, ¶ 104.c.(2).

"[I]n the Article 134, UCMJ, context [the CAAF] ha[s] construed the enumerated offense of indecent acts with another . . . not to reach the 'wholly private moral conduct of an individual,' but ha[s] treated 'open and notorious' sexual acts as outside the private sphere." *United States v. Castellano*, 72 M.J. 217, 222 (C.A.A.F. 2013) (footnote omitted) (citing *United States v. Berry*, 20 C.M.R. 325, 330 (C.M.A. 1956)). "An act [ ] may be 'open and notorious' not merely because of the *locus*, but because of the actual presence of other persons." *Berry*, 20 C.M.R. at 330. The act also can occur "under circumstances where it is 'reasonably likely' to be seen by another person or where the actor

---

[11] *See, e.g.*, 18 U.S.C. § 2256(8) (defining "child pornography" to include "any visual depiction" involving or appearing to involve a "minor engaging in sexually explicit conduct").

knows another person is present, even though the other person did not actually observe the act." *Burkhart*, 72 M.J. at 596 (citations omitted).

Our sister court has declared, "Three factors emerge [from case law] as hallmarks of indecent conduct: (1) lack of consent; (2) involvement of a child; and/or (3) public visibility." *United States v. Johnston*, 75 M.J. 563, 567 (N.M. Ct. Crim. App. 2016).[12]

**C. Analysis**

At trial, Appellant attacked the specification on Fifth and Sixth Amendment grounds. While the Fifth Amendment due process argument at trial focused on failure to state an offense, Appellant's argument on appeal is lack of fair notice—a similar attack still based on the Fifth Amendment's due process clause. Thus, Appellant preserved his constitutional challenge to the specification. We review this claim de novo: Should Appellant have been on notice that sexual acts performed with an inanimate object, alone and in a private setting, and unknown to others, that did not also involve any clearly prohibited conduct (e.g., production or possession of child pornography), were subject to criminal sanction? We answer this question in the negative.[13]

Traditionally, obscenity or indecency "must, as a general thing, involve or touch other persons." *United States v. Snyder*, 4 C.M.R. 15, 18 (C.M.A. 1952). This is not to say that indecent acts must be committed *with* another. Our review of case law reveals several hallmarks of criminally indecent conduct, to include: (1) minors or others who do not consent or may not easily either refuse or manifest lack of consent;[14] (2) prostitution, contraband, or other precursor

---

[12] The *Johnston* court considered the meaning of "indecent manner" under Article 120c(d)(6) (2012 *MCM*) (indecent exposure), where "indecent" was defined substantially the same as in indecent conduct under Article 134, UCMJ. *Id.* at 566; *MCM*, pt. IV, ¶ 104.c.(1).

[13] The Government argues that the offense of indecent conduct "has withstood void for vagueness challenges in multiple service courts on multiple occasions over multiple decades," and in support of this position, cites four unpublished opinions concerning either minors or public conduct. Appellant, however, does not claim that the offense of indecent conduct enumerated under Article 134, UCMJ, is void for vagueness. Our holding does not declare that the offense of indecent conduct is per se unconstitutionally vague. The issue in this case is not whether Appellant was on notice that committing indecent conduct was a criminal offense, but whether he was on notice that sexual acts with a sex doll with the physical characteristics of a female child could be criminally indecent conduct.

[14] *See Lawrence*, 539 U.S. at 578 ("The present case does not involve minors. It does not involve persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused. It does not involve public conduct or prostitution.").

or concurrent criminal conduct;[15] and (3) in public, or in an open and notorious manner.[16] *See generally United States v. Goings*, 72 M.J. 202, 206–07 (C.A.A.F. 2013), and *United States v. Marcum*, 60 M.J. 198, 207 (C.A.A.F. 2004), for a discussion of *Lawrence v. Texas,* 539 U.S. 558 (2003), and related case law on such factors. Appellant's case includes none of these factors. Even looking beyond the recognized hallmarks, we find meager support for the contention that Appellant otherwise had constitutionally required fair notice that the conduct at issue was criminally indecent.

In its brief to this court, the Government notes that the offense of indecent conduct is an enumerated offense under Article 134, UCMJ, in the *Manual for Courts-Martial*. However, the fact that it is enumerated as an offense does not end the inquiry into whether Appellant was provided constitutionally required notice that his conduct was criminally indecent.[17] The Government has not identified—and we ourselves have not found—anything in the *MCM*, federal law, military case law, military custom and usage, military regulations, or even state law that criminalized the *type of conduct for which Appellant was convicted. See Vaughan*, 58 M.J. at 31. We agree with Appellant that "none of the sources listed in *Vaughan*, nor the record itself, show that masturbating with a child sex doll was subject to criminal sanction."

The Government argues to this court that Appellant's conduct involved a minor and was public. We disagree. First, the Government claims, "Though Appellant is correct that the sex doll in this case is not an 'actual minor,' . . . Appellant's conduct nonetheless 'involves minors' since he used the doll to simulate sexual acts *with actual minors*." We disagree. Appellant's conduct was an actual sexual act with an object that may have simulated a minor but plainly was not an actual minor. Additionally, internal thoughts and feelings—

---

[15] *See, e.g.*, *United States v. Rollins*, 61 M.J. 338, 345 (C.A.A.F. 2005) (where appellant exchanged "pornographic materials with a young person as a part of a plan or scheme to stimulate a sexual act in a public place").

[16] *See, e.g.*, *United States v. Izquierdo*, 51 M.J. 421, 423 (C.A.A.F. 1999) (where the sexual intercourse was in a shared barracks room, with the door closed and no one else present, "there [was] not sufficient evidence, as a matter of law, of the open and notorious nature of the sexual conduct to sustain a finding of guilty" for indecent acts with another).

[17] Presidential enumeration of offenses is "merely indicating various circumstances in which the elements of Article 134, UCMJ, could be met." *United States v. Jones*, 68 M.J. 465, 471 (C.A.A.F. 2010).

which in this case did not include Appellant pretending the doll was an actual child during his sexual activity—do not transform the doll into a "minor."[18]

Next, the Government argues Appellant's conduct was not a "fully private matter," as Appellant had the doll shipped to an Airman, "then used the child-like sex doll multiple times in his on-base dorm room and in a shared common area," and the doll was discovered during a dorm inspection.[19] The record does not support a conclusion that Appellant masturbated with the doll in any shared space—including the shower. And that the doll was shipped to another Airman and eventually discovered during a dorm inspection are not "public" or "open and notorious" circumstances that would put one on fair notice that masturbating with the doll was criminal.

The Government asserts Appellant was on actual notice that his conduct was proscribed. We disagree. As no source provided fair notice, it is improbable Appellant could have had actual notice. Moreover, what the Government and our colleague in the dissent characterize as evidence of consciousness of guilt—e.g., concealing the doll's purchase and presence in his room, and minimizing his interactions with the doll in his statements to AFOSI agents—we find instead is better viewed as evidence of Appellant's efforts to keep his activity with his doll a wholly private matter. Put another way, Appellant was not concealing a crime but instead was concealing his "weird" actions. Even Appellant feeling "bad" or "disgusted" is weak evidence to support knowledge that his activities were criminal. As the CAAF noted in *Merritt*, "the fact that a service-member may be ashamed of certain conduct is not sufficient by itself to equate to due process notice that the conduct was subject to criminal sanction." 72 M.J. at 487.

We find Appellant did not have fair notice that his alleged conduct was punishable as indecent conduct, and Appellant suffered material prejudice to

---

[18] We find this caution regarding possession of images that are not child pornography apt to this case involving a doll of a child: "If an accused's subjective reaction to otherwise constitutionally protected images places the images in Article 134's crosshairs, the danger of sweeping and improper applications of the general article would be wholly unacceptable." *United States v. Moon*, 73 M.J. 382, 389 (C.A.A.F. 2014) (reviewing a conviction for unlawful possession of images that did not meet any recognized definition of child pornography). "Liberty presumes an autonomy of self that includes freedom of thought, belief, expression, and certain intimate conduct." *Lawrence*, 539 U.S. at 562.

[19] The Government asserts these facts are "military nexuses . . . sufficient to render Appellant's conduct outside of *Lawrence*'s liberty interest." We do not reach that issue, as our decision is based on lack of notice.

his constitutional due process right to such notice. *See* Article 59(a), UCMJ, 18 U.S.C. § 859(a).

### III. CONCLUSION

The findings of guilty and the sentence as entered are **SET ASIDE**. The charge and specification are **DISMISSED WITH PREJUDICE**. All rights, privileges, and property of which Appellant has been deprived by virtue of the findings and sentence set aside by this decision are ordered restored. *See* Articles 58b(c) and 75(a), UCMJ, 10 U.S.C. §§ 858b(c), 875(a).

POSCH, Senior Judge (dissenting):

Appellant's objection at trial to Specification 2 of the Charge was that it failed to state an offense. The defense motion, and the ruling that denied it, were aimed at the form of the specification, that is, whether it alleged the essential elements of indecent conduct and so provided notice to Appellant of what he had to defend against. Even as Appellant's trial motion clearly touched on the question whether a servicemember enjoys a liberty interest or, more broadly, a fundamental right to engage in the charged conduct, it is altogether a different claim that Appellant did not know until Specification 2 was preferred that his conduct might be unlawful.

For the first time on appeal, Appellant contends he did not have fair notice that private masturbation with a sex doll having the physical characteristics of a child was subject to criminal sanction.[1] Failure to first lodge a specific objection at trial will operate to forfeit the alleged error on appeal unless the error is plain. *See United States v. Goings*, 72 M.J. 202, 205 (C.A.A.F. 2013) (reviewing as-applied constitutional challenge to the Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 834, offense of indecent acts with another as forfeited, and not waived); *see also* Rule for Courts-Martial 905(e) (effect of failure to raise defenses or objections). However, on this important point, I agree with my colleagues that Appellant's motion to dismiss for failure to state an offense preserved appellate review of the question whether Appellant had fair notice that his conduct was punishable as a violation of Article 134, UCMJ. *See United States v. Saunders*, 59 M.J. 1 (C.A.A.F. 2003); *United States v. Vaughan*, 58 M.J. 29 (C.A.A.F. 2003).

---

[1] In his assignment of error brief to the court, Appellant concedes that trial defense counsel "submitted a written motion for failure to state an offense, but it did not mention the words 'notice' or 'vagueness' or argue that [Appellant] was not on notice that his conduct was criminal."

I reach this conclusion despite the fact that neither Appellant's trial motion nor the military judge's ruling expressly address the issue, so this court must for the first time. Because the complained-of offense was charged as a violation of Article 134, UCMJ, it appears settled that Appellant's motion was sufficient to relieve him of the burden to plainly demonstrate he lacked constitutionally required fair notice of the criminality of his conduct under the Due Process clause of the Fifth Amendment.[2] *Saunders*, 59 M.J. at 6 (*de novo* review); *see generally Vaughan*, 58 M.J. at 31–33; *cf. Goings*, 72 M.J. at 203 (reviewing whether military judge plainly erred in allowing certain conduct to serve as basis for indecent act conviction under Article 134, UCMJ, in violation of a liberty interest protected by *Lawrence v. Texas*, 539 U.S. 558 (2003)).

I depart from my esteemed colleagues because I find Appellant was sufficiently on notice when he engaged in the charged acts that his actions constituted criminal indecent conduct. My principal departure is the application of this court's authority to evaluate the contested ruling, and the findings of guilty that are a result, "on the basis of the entire record." Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1). To begin, in *United States v. Boyett*, the United States Court of Appeals for the Armed Forces (CAAF) evaluated whether the Government violated an officer's due process rights under the Fifth Amendment. 42 M.J. 150 (C.A.A.F. 1995). In *Boyett*, the appellant claimed a specification charging him with engaging in a sexual relationship with an enlisted member not under his supervision was not prosecutable and, thus, was void for vagueness. *Id.* at 152. On appeal, the CAAF's lead opinion observed that "[c]riminal conduct requires an act . . . and appropriate notice that the act would be criminal." *Id.* The CAAF noted: "Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed. In determining the sufficiency of the notice a statute must of necessity be examined in the light of the conduct with which a defendant is charged." *Id.* at 153 (quoting *Parker v. Levy*, 417 U.S. 733, 757 (1974)).

In its application of this standard, the CAAF's lead opinion evaluated particular facts in the record—as must this court under Article 66, UCMJ. After doing so, the CAAF concluded "there [was] sufficient information in th[e] record to conclude that there was adequate notice to appellant of his potential criminality." *Id.* at 154. On the basis of the entire record, I believe Appellant was not deprived of fair notice that his conduct was subject to criminal sanction. In that regard, circumstantial evidence at trial showed Appellant endeavored to conceal his purchase of the doll. He admitted during questioning by investigators that he arranged to have it shipped to an address off base because

---

[2] U.S. CONST. amend. V.

"it's *obvious* it's not good to have something like that on a military base." (Emphasis added). He admitted having the doll was "not good because that is representative of a real-life human being." Furthermore, Appellant initially lied to investigators about whether he engaged in sexual acts with the doll. Appellant stated that, after he committed sexual acts with the doll, he "felt bad because [he] did like it up until the point where [he] started thinking about if it were . . . somebody's daughter and [he] felt . . . disgusted with" himself. Under these circumstances, Appellant did not lack fair notice that his conduct was indecent and therefore punishable.

The majority cites *United States v. Merritt*, 72 M.J. 483, 487 (C.A.A.F. 2013), for the rule that an accused's feeling shame is insufficient to prove constitutional notice. However, Appellant's admissions went further than embarrassment, reaching consciousness of guilt in the way he described concealing his purchase and possession of the doll and initially lying about how he used it for sexual gratification. His admissions show awareness that the doll was "obvious[ly]" incompatible with keeping it on a military installation. In no small measure, the inference that Appellant actually knew it would be incompatible with military law to use a doll with the physical characteristics of a child in the manner it was designed, and that the Government charged, is objectively reasonable. Put simply, Appellant's admissions show he did not lack constitutionally required fair notice of what was forbidden.

*Merritt* can be distinguished another way. Unlike the offense that was charged in that case, objectively reasonable notice of the charged conduct includes the fact that the offense of indecent conduct is proscribed by an enumerated offense in the *Manual for Courts-Martial, United States* (2019 ed.) (*MCM*). *Cf. Merritt*, 72 M.J. at 488 (concluding that the appellant lacked fair notice of *unenumerated* Article 134 offense); *Vaughan*, 58 M.J. at 31 (observing "that child neglect is not specifically listed in the *MCM* as an Article 134 offense," and noting the court "*must look elsewhere* to determine whether [the a]ppellant should have reasonably contemplated that her conduct was subject to criminal sanction" (emphasis added)). Consistent with the language of the specification at issue, "indecent conduct" includes acts that may not involve others. In that regard, the *MCM* explains that unlike "offenses previously proscribed by '[i]ndecent acts with another,' . . . the presence of another person is no longer required." *MCM*, pt. IV, ¶ 104.c.(2).

The Government argues that the enumerated offense, or one like it, has withstood due process challenge in other contexts. I agree. *See, e.g., United States v. Capps*, No. ACM 38160, 2013 CCA LEXIS 842, at *8 (A.F. Ct. Crim. App. 9 Oct. 2013) (unpub. op.) (concluding the "appellant had fair notice that his conduct was criminal under the indecent acts statute" in his indecent communications with a child); *United States v. Hancock*, NMCCA 201100466, 2012

CCA LEXIS 110, at *3 (N.M. Ct. Crim. App. 29 Mar. 2012) (unpub. op.) (indecent conduct definition sufficient to "provide a person of ordinary intelligence fair notice of what is prohibited" and not "so standardless that it authorizes or encourages seriously discriminatory enforcement" (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)); *United States v. Rheel*, NMCCA 201100108, 2011 CCA LEXIS 370, at *8–9 (N.M. Ct. Crim. App. 20 Dec. 2011) (unpub. op.) ("The statutory definition [of indecent conduct] provides adequate notice to an ordinary person about what conduct is forbidden."); *United States v. Dunn*, No. 200200020, 2005 CCA LEXIS 9, at *3 (N.M. Ct. Crim. App. 14 Jan. 2005) (unpub. op.) (holding "that indecent acts charged under Article 134, UCMJ, is defined with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement").

The Government argues, moreover, that the offense of "Indecent Conduct" is inherently expansive in its reach. It argues that the President cannot reasonably be required to foresee or enumerate with specificity all possible acts of indecent conduct, which, per the enumerated offense, covers "immorality relating to sexual impurity which [are] grossly vulgar, obscene, and repugnant to common propriety, and [which] tend[ ] to excite sexual desire or deprave morals with respect to sexual relations." *MCM*, pt. IV, ¶ 104.c.(1); *see also Capps*, 2013 CCA LEXIS 842, at *10 ("To the extent that the indecent acts statute might lend itself to 'close cases' as to whether an accused's conduct is indecent, '[t]he problem [that poses] is addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt.'" (first alteration in original) (quoting *Williams*, 553 U.S. at 306)). I agree with the Government that Appellant had objectively reasonable notice that engaging in sexual acts with a child-like sex doll was proscribed by statute when evidence showed he engaged in the conduct alleged in Specification 2 of the Charge, quoted *supra* in the opinion of the court. Appellant's furtive behavior is inferential evidence that a reasonable person would know that using it to simulate anal and vaginal intercourse with an actual child was service discrediting.

For these reasons, Appellant had fair notice of the criminality of his actions. I would accordingly find Appellant is not entitled to relief on this basis. Furthermore, I would reach the remainder of Appellant's raised issues, and having carefully considered them and finding no material prejudice to a substantial right, I would resolve them adversely to Appellant—including Appellant's separate contention raised at trial, and again on appeal, that the specification fails to state an offense.

Accordingly, I respectfully dissent.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court