*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

_____

## UNITED STATES
Appellant

**v.**

## Zachary C. ROCHA, Airman
United States Air Force, Appellee

**No. 23-0134**
Crim. App. No. 40134

Argued October 25, 2023—Decided May 8, 2024

Military Judge: Colin P. Eichenberger

For Appellant: *Major Jay S. Peer* (argued); *Colonel Naomi P. Dennis*, *Lieutenant Colonel Matthew J. Neil*, and *Mary Ellen Payne*, Esq. (on brief).

For Appellee: *Major Spencer R. Nelson* (argued); *Captain Samantha P. Golseth* (on brief).

Chief Judge OHLSON delivered the opinion of the Court, in which Judge SPARKS and Judge MAGGS joined. Judge HARDY filed a separate dissenting opinion. Judge JOHNSON filed a separate dissenting opinion, in which Judge HARDY joined in part.

_____

Chief Judge OHLSON delivered the opinion of the Court.

During a health and comfort inspection of his Air Force dormitory room, Appellee was discovered to be in possession of an anatomically correct sex doll depicting a prepubescent girl. Upon questioning by Air Force Office of Special Investigations (AFOSI) agents, Appellee acknowledged that the doll was "representative of a real life human being" and admitted to penetrating the child sex doll with his penis on three separate occasions. A panel of members sitting as a general court-martial convicted Appellee of one specification of indecent conduct in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2018). The United States Air Force Court of Criminal Appeals (CCA) set aside and dismissed Appellee's Article 134 charge, holding that Appellee did not have fair notice that his conduct was criminally sanctionable. The Judge Advocate General of the Air Force (TJAG) subsequently certified one issue for this Court to review:

> Whether the presidentially-enumerated Article 134, UCMJ, offense of indecent conduct provided Appellee with constitutionally-required fair notice that committing sexual acts with a child sex doll was subject to criminal sanction.

*United States v. Rocha*, 83 M.J. 275 (C.A.A.F. 2023) (certificate for review). We answer the certified issue in the affirmative, reverse the judgment of the CCA, and return the case to TJAG for remand to the CCA for further proceedings consistent with this opinion.

## I. Background

While living in an on-base dormitory, Appellee purchased via the internet a childlike sex doll from a company in China. The doll was made of silicone, stood approximately four feet tall, and had characteristics of a prepubescent girl, including anatomically correct oral, anal, and vaginal orifices and small breasts. The doll also came equipped with a speaker which would emit "moaning" sounds when activated. After receiving the doll, Appellee

2

named it "Adele" and proceeded to clothe it, talk to it, watch TV with it, and brush its hair.

Approximately three weeks after receiving the doll, Appellee's chain of command conducted a health and comfort inspection of his dormitory room and discovered the doll in Appellee's bed. During questioning by AFOSI agents, Appellee first suggested that he only engaged in nonsexual activities with the doll. However, upon further questioning, Appellee admitted to committing sex acts with the doll on three separate occasions—to include the first night he received it—by penetrating it vaginally and anally with his penis. Appellee was subsequently charged with indecent conduct for engaging in "sexual acts with a sex doll with the physical characteristics of a female child."

At trial, Appellee filed a motion to dismiss and argued that the indecent conduct specification of Article 134 did not state an offense because the conduct it alleged as criminal—engaging in sexual acts with a sex doll with the physical characteristics of a female child—"constitutes private consensual sexual activity," was not accompanied by any aggravating factors, and was therefore constitutionally protected pursuant to *Lawrence v. Texas*, 539 U.S. 558 (2003). The military judge denied the defense motion, determining that the indecent conduct specification stated an offense because it alleged the essential elements of the offense and provided protection against double jeopardy. He further articulated that whether an aggravating circumstance exists is a factual determination that must be made by the trier of fact.

The military judge gave an instruction to the panel members sitting as a general court-martial that in order to determine that the alleged conduct was indecent, the panel must find beyond a reasonable doubt the following aggravating circumstance: "[That] the accused engaged in sexual acts with a sex doll, with the physical characteristics of a female child, to simulate sexual acts with a minor." The panel subsequently convicted Appellee of one specification

of indecent conduct in violation of Article 134.[1] The military judge sentenced Appellee to a bad-conduct discharge, ninety days of confinement, forfeiture of all pay and allowances, and reduction to E-1. The convening authority took no action on the findings and approved the sentence.

## II. The CCA Appeal

On appeal to the CCA, Appellee raised eight assignments of error, including that he did not have constitutionally required fair notice that private sexual acts with a childlike sex doll was subject to criminal sanction.[2] The CCA agreed with Appellee and stated that his actions did not include any of the "hallmarks of criminally indecent conduct" prevalent in the case law—namely, "(1) [the involvement of] minors or others who do not consent or may not easily either refuse or manifest lack of consent; (2) prostitution, contraband, or other precursor or concurrent criminal conduct; and (3) [sexual conduct] in public, or in an open and notorious manner." *Rocha*, 2022 CCA LEXIS 725, at *15-16, 2022 WL 17730741, at *6 (footnotes omitted). Further, the CCA stated that it had failed to identify "anything in the [*Manual for Courts-Martial, United States* (*MCM*)], federal law, military case law, military custom and usage, military regulations, or even state law that criminalized the *type of conduct for which [Appellee] was convicted.*" *Id.* at *16, 2022 WL 17730741, at *7. Because the CCA found there was no fair notice, the lower court did not address the remaining assignments of error, set aside

---

[1] The members acquitted Appellee of an unrelated specification of receiving child pornography in violation of Article 134.

[2] As he did at the trial court level, Appellee argued at the CCA that "private masturbation with a doll is constitutionally protected conduct" under *Lawrence*, 539 U.S. 558, and *United States v. Marcum*, 60 M.J. 198 (C.A.A.F. 2004). *United States v. Rocha*, No. ACM 40134, 2022 CCA LEXIS 725, at *2, 2022 WL 17730741, at *1 (A.F. Ct. Crim. App. Dec. 16, 2022) (unpublished). Since the CCA's opinion considered the issue of fair notice to be dispositive, it did not reach this issue. *Id.* at *17 n.19, 2022 WL 17730741, at *7 n.19.

the findings and sentence, and dismissed the charge and specification with prejudice.

### III. Standard of Review

Despite Appellee's argument to the contrary, this Court must use a plain error standard of review when reviewing the applicable rulings of the military judge in this case. Appellee argues that this Court should engage in de novo review because of the constitutional claim he made at the trial level and because the certified issue changed the scope of the question from notice to a question of statutory interpretation. Appellee's arguments are unpersuasive.

First, the certified issue pertains to whether Appellee had "fair notice" that his sexual conduct with the doll was criminal. Second, trial defense counsel failed to raise the issue of fair notice at trial, thus forfeiting the issue on appeal. *United States v. Warner*, 73 M.J. 1, 3 (C.A.A.F. 2013) (reviewing defects in charges—such as claims of lack of fair notice—for plain error "[w]hen not objected to at trial"). And third, we note that Appellee conceded in his brief to the CCA that the correct standard of review is plain error where "defects in the charges, including fair notice," were not objected to at trial, and the case law he cites before this Court to support his contention that the certified issue is one of statutory interpretation, thereby requiring de novo review, is not on point.

Under plain error review, Appellee has the burden of demonstrating that: "(1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right of [Appellee]." *United States v. Wilkins*, 71 M.J. 410, 412 (C.A.A.F. 2012). However, in those instances where a clear or obvious error rises to the level of a constitutional violation, the burden shifts to the government to "show that the error was harmless beyond a reasonable doubt." *United States v. Tovarchavez*, 78 M.J. 458, 462-63 (C.A.A.F. 2019).

## IV. Applicable Law

The Fifth Amendment prohibits the deprivation of "life, liberty, or property" without due process. U.S. Const. amend. V. The Supreme Court has stated that due process requires a statute to provide "a person of ordinary intelligence" fair notice of prohibited conduct. *United States v. Williams*, 553 U.S. 285, 304 (2008). The "touchstone" of fair notice "is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259, 267 (1997).

The statute under which Appellee was charged is Article 134, known as the "General Article." Article 134, among other things, criminalizes service discrediting conduct by servicemembers. *United States v. Merritt*, 72 M.J. 483, 487 (C.A.A.F. 2013). "[A]s a matter of due process, a service member must have 'fair notice that his conduct [is] punishable' before he can be charged under Article 134 with a service discrediting offense. This Court has found such notice in the *MCM*. . . ." *United States v. Vaughan*, 58 M.J. 29, 31 (C.A.A.F. 2003) (second alteration in original) (internal quotation marks omitted) (quoting *United States v. Bivins*, 49 M.J. 328, 330 (C.A.A.F. 1998)).

In the *MCM,* the President has enumerated a non-exhaustive list of offenses with which a servicemember can be charged under Article 134. One of these presidentially enumerated offenses under Article 134 is indecent conduct. *MCM* pt. IV, para. 104.b. (2019 ed.). The President listed the elements of this offense as follows:

> (1) That the accused engaged in certain conduct;
>
> (2) That the conduct was indecent;
>
> (3) That under the circumstances, the conduct of the accused was either: (i) to the prejudice of good order and discipline in the armed forces; (ii) was of a nature to bring discredit upon the armed forces; or (iii) [both].

*Id.*

The President further defined "[i]ndecent" as: "[T]hat form of immorality relating to sexual impurity which is grossly vulgar, obscene, and repugnant to common propriety, and tends to excite sexual desire or deprave morals with respect to sexual relations." *MCM* pt. IV, para. 104.c.(1). The President also specified that "[i]ndecent conduct includes offenses previously proscribed by 'indecent acts with another' except that *the presence of another person is no longer required." MCM* pt. IV, para. 104.c.(2) (emphasis added).

## V. Discussion

In order to address the certified issue, this Court must first answer the general question of whether the presidentially enumerated offenses in Part IV of the *MCM* can alone provide fair notice to servicemembers that certain conduct is criminal. If so, we then must address the specific question of whether the presidentially enumerated offense of indecent conduct under Article 134 provided Appellee with fair notice that committing sexual acts with a childlike sex doll was subject to criminal sanction.

### A. Presidentially Enumerated Elements and Fair Notice

Appellee argues that presidentially enumerated elements in Part IV of the *MCM* cannot alone provide fair notice to servicemembers because they are not part of the statutory language of the UCMJ and thus are not "law." Appellee supports this claim by correctly asserting two important points. First, the President's enumerations and explanations are not binding on this Court. *See United States v. Miller*, 67 M.J. 87, 89 (C.A.A.F. 2008) ("Although *MCM* explanations of offenses are not binding on this Court, they are generally treated as persuasive authority."). Second, the President does not have the power to create an offense under the UCMJ. *See United States v. McCormick*, 12 C.M.A. 26, 28, 30 C.M.R. 26, 28 (1960) ("The President's power as Commander-in-Chief does not embody legislative authority to provide crimes and offenses.").

Appellee's first point, however, fails to adequately account for the special importance within the military justice system of the President's enumerations. This Court has stated that "[p]residential narrowing of the 'general' article through examples of how it may be violated is part of why Article 134, UCMJ" is not considered unconstitutionally void for vagueness. *United States v. Jones*, 68 M.J. 465, 472 (C.A.A.F. 2010) (citing *Parker v. Levy*, 417 U.S. 733, 753-56 (1974)). And importantly, it is this narrowing of the breadth of Article 134 through these presidential enumerations that provides servicemembers with fair notice of what conduct is subject to criminal sanction under the statute. This point is supported by *Parker*. There, the Supreme Court "noted that interpretations by this Court, military authorities, as well as the examples in the [*MCM*] . . . have limited the broad reach of the literal language of Article 134," thus providing fair notice to servicemembers. *Vaughan*, 58 M.J. at 31 (citing *Parker*, 417 U.S. at 753-54).

In terms of Appellee's second point, the President is not creating new offenses with his enumeration of *examples* of Article 134 offenses. There is a distinction between the ability to *create* offenses—thus adding new articles to the UCMJ—and the ability to enumerate elements that *narrow* the construction of an existing criminal statute. *See Wilson*, 76 M.J. at 6 (the President's power "does not extend to Part IV of the *MCM*"). The former is not within the President's power while the latter is, through his constitutional authority as commander-in-chief. U.S. Const. art. II, § 2, cl. 1; *see United States v. Davis*, 47 M.J. 484, 486 (C.A.A.F. 1998) (deferring to the presidentially enumerated language of Article 128, UCMJ, 10 U.S.C. § 928 (1994), "[b]ecause there is no contradiction with the Code, and in deference to the President's authority and the hierarchy of rights").

### B. Indecent Conduct Under Article 134

Having determined that presidentially enumerated elements standing alone can provide fair notice to servicemembers, we now turn to whether the elements of indecent conduct under Article 134 provide fair notice that

committing sexual acts with a childlike sex doll is subject to criminal sanction.

The President has indicated that Article 134 criminalizes "conduct [that is] indecent" and defines "[i]ndecent" as "that form of immorality relating to sexual impurity which is grossly vulgar, obscene, and repugnant to common propriety, and tends to excite sexual desire or deprave morals with respect to sexual relations." *MCM* pt. IV, para. 104.c.(1). To be sure, this language is somewhat archaic, but that does not mean that it is impermissibly arcane. As the Supreme Court stated in *Lanier*, the "touchstone" of our analysis must simply be to determine "whether the statute . . . made it *reasonably* clear at the relevant time that the [accused's] conduct was criminal." *Lanier*, 520 U.S. at 267 (emphasis added). In other words, absolute precision is not the standard. Rather, statutes must strike the fine balance of being "sufficiently definite to give notice of the required conduct to one who would avoid its penalties" with the requisite broadness to adequately "deal with untold and unforeseen variations in factual situations." *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 340 (1952).

It is true that in light of our changing society, the boundary between what sexual conduct is "indecent" and what sexual conduct is not "indecent" may be so amorphous as to leave a servicemember of ordinary intelligence without sufficient notice of whether a specific act he or she wishes to engage in is subject to criminal sanction under the UCMJ. That, however, is not the case here. Simply stated, the elements and accompanying definition of "indecent" provide servicemembers with fair notice that the specific act of penetrating with one's penis the anal and vaginal orifices of a lifelike sex doll with the physical characteristics of a prepubescent child is, indeed, prohibited under Article 134.

The conclusion that Appellee had fair notice that his conduct was criminally actionable is further supported by the fact that closely similar conduct is proscribed by statute. For example, under Article 134, knowingly possessing an "obscene visual depiction of a minor engaging in

sexually explicit conduct" constitutes a child pornography offense. *MCM* pt. IV, para. 95.c.(4). Therefore, it would require no significant leap of logic for a servicemember of ordinary intelligence to conclude that knowingly possessing a visual depiction of a minor in the form of a lifelike child sex doll with vaginal and anal orifices, and then engaging in sexually explicit conduct with that child sex doll, would similarly be criminally actionable. This is particularly so because the President has clarified in the *MCM* that the possession of obscene images may be criminally actionable even when they "may not actually involve minors, but either *resemble* or are staged to appear so." *Id.* pt. IV, para. 95.c.(1) (emphasis added).

Moreover, although not dispositive, the facts in this case paint a convincing portrait that Appellee actually *knew* he was dealing with an item that closely resembled a minor and that his conduct would be considered "indecent" by a person of ordinary intelligence.[3] For example, Appellee acknowledged that the doll was "representative of a real-life human being" and that it was "obvious" that the sex doll he had purchased looked like a child. Further, Appellee had the doll shipped to an off-base address because "it's obvious it's not good to have something like that on a military base." Although "the fact that a servicemember may be ashamed of certain conduct is not sufficient by itself to equate to due process notice that the conduct was subject to criminal sanction," *Merritt*, 72 M.J. at 487, Appellee's own statements provide additional context for the conclusion that he knew that engaging in sexual acts with a child-like sex doll was illegal and that other servicemembers of ordinary intelligence also would perceive his behavior as criminally sanctionable.

---

[3] Indeed, one of the noncommissioned officers who first discovered the doll in Appellee's bed testified that he found it so lifelike that, when he first saw it, he "gasped a little bit [and] stepped back." He further stated that "at the time [I saw the doll] my granddaughter was 3 years old and it looked just like her to me or very similar."

Based upon this analysis, we conclude that the presidentially enumerated language of indecent conduct under Article 134 was sufficient by itself to provide fair notice that Appellee's conduct was criminally sanctionable. It therefore is irrelevant that the Government cannot point to state or federal laws that existed at the time of the incident which criminalized possession or sex with a child sex doll. Accordingly, we hold that the presidentially enumerated elements and definitions of Article 134 provide fair notice to servicemembers of ordinary intelligence that engaging in sexual acts with a lifelike child sex doll falls squarely within the President's definition of indecent conduct.[4]

## VI. Judgment

The decision of the United States Air Force Court of Criminal Appeals is reversed. The case is returned to the Judge Advocate General of the Air Force for remand to the United States Air Force Court of Criminal Appeals with instructions to: (1) determine whether Appellee had a constitutionally protected liberty interest under *Lawrence v. Texas*, 539 U.S. 558 (2003), to privately engage in sexual activity with a childlike sex doll; and (2) address any other issues previously raised by Appellee before the United States Air Force Court of Criminal Appeals that were mooted by the lower court's prior decision to overturn the conviction.

---

[4] Appellee devotes a substantial portion of his brief to asserting that his behavior is constitutionally protected under *Lawrence*, 539 U.S. 558, and its companion case in this Court, *Marcum*, 60 M.J. 198. However, this argument conflates the issue of whether Appellee had fair notice that his conduct met the listed elements of the enumerated offense of indecent conduct with the entirely separate issue of whether Appellee's conduct was constitutionally protected. Moreover, it is not the role of this Court to decide this matter prior to the CCA employing its factfinding authority. *See* Article 67, UCMJ, 10 U.S.C. § 867 (2018); Article 66, UCMJ, 10 U.S.C. § 866 (2018). Therefore, we remand the case to the CCA with instructions to determine, in the first instance, whether Appellee's behavior is constitutionally protected.

Judge HARDY, dissenting.

Because I agree that Appellee did not have fair notice that the charged conduct was criminal, I join Part II.A. of Judge Johnson's well-reasoned dissent.[1] I write separately to express my concerns about the unreasonably broad scope of this Court's jurisprudence with respect to charges brought under clause 2 of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934.

The Government charged Appellee with a criminal offense in this case because it believed that the way Appellee masturbated—in the privacy of his own personal bedroom and unbeknownst to anyone—was indecent and therefore was "of a nature to bring discredit upon the armed forces." Article 134, UCMJ. Although Appellant's criminal liability hinged on the Government proving the terminal element of Article 134, UCMJ, beyond a reasonable doubt, the Government offered no theory, either through evidence or through argument, to explain why Appellee's entirely private conduct was service discrediting in nature.

The criminalization of Appellee's private conduct was only possible because of this Court's decision in *United States v. Phillips*, 70 M.J. 161 (C.A.A.F. 2011), which authorized the Government's cavalier approach toward the terminal element of the clause 2, Article 134 charge in this case. In *Phillips*, the Court concluded that "[t]he focus of clause 2 is on the 'nature' of the conduct, *whether the accused's conduct would tend to bring discredit on the armed forces if known by the public*, not whether it was in fact so known." *Id.* at 165-66. The Court further held that "proof of the conduct itself *may* be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that, under all the circumstances, it was of a nature to bring discredit upon the armed forces." *Id.* at 163.

This case illustrates the consequences of the Court's faulty reasoning in *Phillips*. This Court has repeatedly

---

[1] I decline to join the portion of Judge Johnson's opinion addressing Appellee's First Amendment claim only because I believe that this case can be fully resolved on nonconstitutional grounds.

acknowledged "that the Constitution demands that the Government prove *every* element of an Article 134 offense—including the second or 'terminal' element—beyond a reasonable doubt." *United States v. Richard*, 82 M.J. 473, 476 (C.A.A.F. 2022); *see also United States v. Fosler*, 70 M.J. 225, 226 (C.A.A.F. 2011); *United States v. Wilcox*, 66 M.J. 442, 448 (C.A.A.F. 2008). But *Phillips* enables the government to secure a conviction under clause 2 of Article 134, UCMJ, without making any attempt to litigate the terminal element. Here, the Government offered evidence and argument to prove the first two elements of the enumerated offense—that Appellee engaged in certain conduct and that the conduct was indecent—but relied solely on *Phillips* to carry its burden of proof as to whether Appellee's conduct was of a nature to bring discredit upon the armed forces. I do not see how relieving the Government entirely of its burden of proof for an element of an offense satisfies due process. *See In re Winship*, 397 U.S. 358, 364 (1970) ("[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.").

Absent a basis in evidence and argument to conclude beyond a reasonable doubt that Appellee's entirely private conduct was of a service discrediting nature, *Phillips* authorized the trier of fact to draw this conclusion instead by evaluating whether Appellant's conduct itself "*would tend to bring discredit on the armed forces if known by the public.*" 70 M.J. at 166 (first emphasis added). But such a conclusion comports neither with due process nor with common sense. As a matter of due process, I do not see how a finding that conduct would have a "tendency" to bring discredit upon the service is consistent with proving the terminal element beyond a reasonable doubt. Allowing a finding of guilt based on a finding that the charged conduct *might* be service discrediting—in a hypothetical world where the facts of the case were different from those presented—is a far lower burden than requiring the government to prove that the conduct *was* "of a nature to bring discredit upon the armed forces." Article 134, UCMJ.

As a matter of common sense, entirely private conduct cannot discredit the military—and is therefore not "of a nature" to do so—exactly because no one knows about it. Article 134, UCMJ. The Court's contrary holding in *Phillips* disregards the private nature of the charged conduct without any legal or logical justification. Authorizing convictions based on whether a defendant's purely private conduct would tend to "bring the service into disrepute" or tend to "lower it in public esteem" if his conduct were to somehow become public knowledge mischaracterizes the true nature of the conduct and masks as proof what is merely conjecture. *See Manual for Courts-Martial, United States* pt. IV, para. 91.c.(3) (2019 ed.) (defining conduct of a nature to bring discredit to the armed forces).

"In the administration of criminal justice, courts must carefully guard against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt." *Estelle v. Williams*, 425 U.S. 501, 503 (1976) (citing *In re Winship,* 397 U.S. 358, 364 (1970)). As this case illustrates, *Phillips* dilutes the government's burden of proof as to whether a defendant's conduct charged under clause 2 of Article 134, UCMJ, was "of a nature to bring discredit upon the armed forces." I continue to believe that this Court should reconsider whether *Phillips* is consistent with due process and its own Article 134 jurisprudence.

Judge JOHNSON, with whom Judge HARDY joins in part, dissenting.

For the reasons set forth below, I agree with the United States Air Force Court of Criminal Appeals (AFCCA) that Appellee did not have fair notice that the charged conduct was punishable as indecent conduct. Moreover, I would hold that the charged conduct was constitutionally protected because it did not implicate any aggravating factors that would place it outside the scope of the Supreme Court's decision in *Lawrence v. Texas*, 539 U.S. 558 (2003). I therefore respectfully dissent from the Court's judgment reversing the decision of the AFCCA and remanding for further proceedings.

## I. Standard of Review

Whether an accused had fair notice of the criminality of his conduct is a question of law reviewed de novo. *United States v. Merritt*, 72 M.J. 483, 486 (C.A.A.F. 2013). The Court concludes that Appellee forfeited the fair notice issue by failing to raise it at trial, and therefore applies a plain error standard of review to the rulings of the military judge. I disagree. In my view, Appellee preserved the fair notice issue by moving to dismiss Specification 2 of the Charge for failure to state an offense, and the AFCCA correctly reviewed the issue de novo.

In *Citizens United v. FEC*, the Supreme Court held that the appellant did not waive a facial challenge to the validity of a statute restricting corporate speech by stipulating below to dismissal of that count of its complaint against the Federal Election Commission (FEC). 558 U.S. 310, 329 (2010). The appellant had also raised an as-applied challenge to the same statute which was fully litigated. *Id.* In that context, the Supreme Court determined that, in reasserting the facial challenge on appeal, the appellant was not pressing a new claim, but rather, it was advancing " 'a new argument to support what has been [a] consistent claim: that [the FEC] did not accord [Citizens United] the rights it was obliged to provide by the First Amendment.' " *Id.* at 331 (alterations in original) (quoting *Lebron v. National Railroad Passenger Corp.*, 513 U.S. 374, 379 (1995)). Moreover, the Court noted, the facial and as-applied claims

were inextricably intertwined where "Citizens United has preserved its First Amendment challenge to [the statute] as applied to the facts of its case; and given all the circumstances, we cannot easily address that issue without assuming a premise—the permissibility of restricting corporate political speech—that is itself in doubt." *Id.*

In this case, Appellee preserved the fair notice issue by raising a motion to dismiss for failure to state an offense in which he argued that he had a constitutional liberty interest under *Lawrence* in his private possession of, and private masturbatory conduct with, the doll. The gist of his arguments was that he reasonably believed he was engaging in private, protected conduct. For example, he argued that "it is widely understood that people still hold their privacy interests and have a reasonable expectation to privacy within the dorms"; "[i]t would seem wholly illogical that someone would believe that their privacy rights were diminished because they bought a product online simply by the nature of purchasing the product"; and "[i]f the Government's charging scheme here is sufficient, then they could simply charge any conduct as indecent no matter how private and no matter whether the sexual nature of the conduct is otherwise illegal."[1]

As in *Citizens United*, Appellee's argument on appeal is an argument in support of a claim he advanced at trial: he could not have known and did not believe that his conduct was criminal where there were no aggravating factors taking his behavior outside the protection of *Lawrence*. Furthermore, given the facts and the issues in this case, the fair notice issue is inseparable from the issue he litigated at trial. Because his liberty interest under *Lawrence* goes hand-in-hand with his lack of notice of the criminality of his private conduct, Appellee preserved the issue of fair notice by raising a motion to dismiss for failure to state an offense based on *Lawrence*.[2] Therefore, de novo review is appropriate.

---

[1] Appellee reasserted these arguments in a motion pursuant to Rule for Courts-Martial 917 for a finding of not guilty.

[2] Although the record supports the conclusion that Appellee preserved the fair notice issue, I would conclude he is entitled to

## II. Discussion

I agree with the Court's conclusion that presidentially enumerated elements may provide fair notice to servicemembers that certain conduct is criminal. I part ways with the majority because I cannot agree that the elements of indecent conduct under Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2018), and the definition of "[i]ndecent" as prescribed by the President in the *Manual for Courts-Martial, United States* pt. IV, para. 104.c.(1) (2019 ed.) (*MCM*), provided fair notice that the charged conduct was subject to criminal sanction. "The test for constitutional notice that conduct is subject to criminal sanction is one of law. It does not turn on whether we approve or disapprove of the conduct in question." *United States v. Warner*, 73 M.J. 1, 3 (C.A.A.F. 2013). "Potential sources of fair notice may include federal law, state law, military case law, military custom and usage, and military regulations." *Id.* (citing *United States v. Vaughan*, 58 M.J. 29, 31 (C.A.A.F. 2003)). Because I find that neither the elements or definitions of indecent conduct nor any other source provide fair notice that solitary acts of masturbation with an inanimate object in the privacy of one's bedroom may be criminally proscribed, I would hold that Appellee did not have fair notice that the charged conduct was prohibited.

## A. Fair Notice

The Court concludes that Appellee derived notice that his conduct was unlawful from the presidentially enumerated elements of "indecent conduct" and definition of "indecent." According to the Court, this conclusion is supported by the fact that possession of child pornography—characterized by the Court as "closely similar" to the charged conduct—is proscribed by statute. In other words, because possession or production of an obscene depiction of a minor or what appears to be a minor engaging in sexually explicit conduct constitutes a child pornography offense, a reasonable servicemember of ordinary intelligence would know

---

relief under plain error review as well because, as I argue below, he was not on notice that his conduct was subject to criminal sanction.

that possession of an anatomically correct childlike sex doll and engaging in sexual activity with that doll would similarly be criminally actionable.

I do not accept the Court's premise that the charged conduct is similar to a child pornography offense. In *Merritt*, the Court rejected a "general criminality" theory regarding child pornography, holding that the appellant was not on notice that the unenumerated offense of viewing child pornography was subject to criminal sanction where military case law had long recognized possession of child pornography as an offense but "the 'viewing' of child pornography was not criminalized under the UCMJ, the *MCM,* military custom or usage, the comprehensive federal statutes, or the majority of state statutes." 72 M.J. at 488 (internal quotation marks omitted).[3] As the Court explained:

> Underlying this argument is the government's theory that there is an aura of criminality surrounding child pornography which placed servicemembers on notice that any conduct involving child pornography constitutes criminal conduct even though that conduct was not criminalized by almost all traditional sources of due process notice. While actions related to viewing child pornography may well subject a servicemember to prosecution for violation of other criminal offenses involving child pornography (such as possession or transmission), it does not follow that conduct not otherwise prohibited becomes criminalized solely due to its proximity to the prohibited conduct. In this case, the government's argument suggests that Merritt was on notice that there was an additional criminal act that occurred when he viewed the very same pictures that he was charged with possessing.
>
> We decline to adopt such an amorphous standard and adhere to the traditional sources of notice set forth in *Vaughan*.

---

[3] The offenses at issues in *Merritt* occurred in 2006. Viewing of child pornography was criminalized in the 2012 *MCM*, by Exec. Order No. 13,593, 76 Fed. Reg. 78,451, 78,458-63 (Dec. 16, 2011).

*Id.* (footnote omitted).

Similarly, in *Warner*, the Court held that the appellant was not on notice that possession of child erotica, charged as "images 'that depict minors as sexual objects or in a sexually suggestive way,'" was subject to criminal sanction. 73 M.J. at 2. The evidence consisted of "twenty unique images of minor girls, none of which depicts nudity. Rather, these images depict minor girls posing provocatively in revealing clothing, with highly distasteful captions superimposed on the images." *Id.* (footnote omitted). The Court reviewed for plain error the appellant's claim, raised for the first time on appeal, that he did not have fair notice that the charged conduct was subject to criminal sanction. *Id.* at 3. It concluded:

> [A]lthough child pornography is a highly regulated area of criminal law, no prohibition against possession of images of minors that are sexually suggestive but do not depict nudity or otherwise reach the federal definition of child pornography exists in any of the potential sources of fair notice set out in *Vaughan* and available to Appellant. It follows that the Appellant received no such notice.

*Id.* at 4.

Currently, child pornography offenses encompass the possession, viewing, production and distribution of obscene visual depictions of children engaged in *sexually explicit conduct*. *MCM* pt. IV, para. 95.b., 95.c.(4) (2019 ed.) (emphasis added). And, as the Court correctly notes, servicemembers may be convicted under Article 134 of child pornography offenses involving what appear to be minors. *United States v. Mason*, 60 M.J. 15, 20 (C.A.A.F. 2004) ("The receipt or possession of 'virtual' child pornography can, like 'actual' child pornography, be service-discrediting or prejudicial to good order and discipline.").

In this case, Appellee was not charged with possession, viewing, production, or distribution of an obscene visual depiction of a child engaging in sexually explicit conduct. He was charged with engaging in sexual acts—alone, in his bedroom, with a toy—"to simulate sexual acts with a

minor."[4] There is no evidence that those acts were viewed or recorded by anyone, or that any such recording was produced, viewed, possessed, or distributed. In short, the charged conduct of privately using a toy for personal sexual gratification is not similar to possessing, viewing, producing or distributing depictions of children engaged in sexually explicit acts.[5]

Moreover, the doll's resemblance to a child does not make otherwise-lawful conduct unlawful. Nothing in the statutory or enumerated language of the *MCM* gives notice that engaging in private, consensual, sexual acts with someone or something that looks like a child but is not in fact a child would, on that basis alone, constitute a punishable offense. Nor does the statutory or enumerated language of the *MCM* establish that wholly private, solitary sexual conduct is punishable merely because it is done for personal sexual gratification. *See United States v. Kim*, 83 M.J. 235, 239 (C.A.A.F. 2023) (stating that "images viewed for sexual gratification do not necessarily lose their First Amendment protection"); *United States v. Moon*, 73 M.J. 382, 389 (C.A.A.F. 2014) (concluding that possession of child erotica that is neither obscene nor constitutes child pornography "for one's sexual gratification does not itself remove such [material] from First Amendment protection"); *United States v. Marcum*, 60 M.J. 198, 206-07 (C.A.A.F. 2004) (recognizing that wholly private, consensual sexual activity that is otherwise proscribed by the UCMJ may be constitutionally protected).

Turning to outside sources, the parties agree that no federal or state statute criminalized the possession or use of childlike sex dolls at the time of Appellee's charged conduct. However, the Government points to five subsequently enacted state statutes that criminalize the possession of

---

[4] Appellee denied that he was trying to simulate acts with a minor. He specifically stated, "I can't see myself doing that to an actual child."

[5] Nor does Appellee's conduct implicate consent in any way given the inanimate nature of his sexual object. Therefore, his conduct is not similar to the rape, sexual assault, or sexual abuse of any person, including a child.

child sex dolls, and two failed attempts to enact similar legislation in Congress. While the Court dismisses these legislative developments as irrelevant, in my view the fact that five states enacted such legislation after Appellee engaged in the charged conduct, and that Congress was unable to enact similar legislation, supports the conclusion that the conduct was not prohibited by any law at the time of the charged offense and Appellee did not have fair notice that his conduct could be criminally proscribed.

Next, the Court contends that Appellee actually knew his conduct was prohibited, citing his acknowledgment that the doll resembled a child and the fact that he had it shipped to an off-base residence. Viewed in context, Appellee's statements merely expressed embarrassment about his relationship to the doll even as he distinguished his conduct from child pornography offenses.

When Appellee was first questioned about the doll, he was advised that he was suspected of an Article 134, UCMJ, offense concerning child pornography. Appellee waived his rights and spoke with the Air Force Office of Special Investigations (AFOSI) about the doll. In the interview, Appellee explained that he found the doll on a website that sold sex dolls. He stated that he was "looking at mini sex dolls" because "the larger ones" would not fit well in his small dorm room and would be "bulky" and "hard to move." Although the resemblance to a child was "obvious" to Appellee, the product description "never said anything about a child doll." Appellee had it shipped to the home of a senior airman rather than to his own dorm because the dorm address was a post office box and the package could not be delivered to a post office box. Not knowing what it contained, the senior airman delivered the package to Appellee when it arrived.

The AFOSI agents pressed Appellee to explain what was wrong with having the doll. Appellee said, "I can understand why the doll would not be good because that is representative of a real life human being," but he added, "I don't know exactly what the problem is." He explained, "Well, when I got it, at first, it didn't feel like anything was wrong because, you know, it's just a [indiscernible]. I'll

7

have something that I can talk to that looks like a real person and it won't take up very much space." (Alteration in original.) At the same time, he said it was "embarrassing" and he worried that "an outside perspective" would find it "really weird" because "[i]t's a doll of a child."

Appellee admitted to masturbating with the doll on three occasions. He said that using the doll made him feel sad and dirty, and he stopped each time when he began to think about "what if this was a life, what if this was real." He said that he could not see himself having sex with an actual child. Appellee told the agents he preferred anime pornography. Distinguishing his conduct from child pornography, he explained that he did not like actual pornography and he believed child pornography was "actual child abuse."

Viewed in the context of an interrogation based on suspicion of child pornography offenses, Appellee's statements cannot fairly be viewed as an admission that he knew his conduct was prohibited. Instead, he viewed his conduct as private and different from child pornography.[6]

---

[6] The transcript of Appellee's AFOSI interview supports this conclusion:

> SA Lee: Was there ever a time where, like, you were picturing [the doll] as real, like, and you were in to [sic] it?
>
> ACC: Real as in like real child, somebody's daughter. No. No.
>
> SA Lee: And no feeling ever went through to viewing any real pornographic materials in relation to that?
>
> ACC: No. In the first place, I don't really like actual pornography. And I think child pornography is actual child abuse.
>
> SA Andrews: Yeah.
>
> ACC: And it kind of seems strange that I have, basically what is a child sex doll, yet that being said, I think child pornography with a real child involved is just disgusting.
>
> SA Andrews: So with a doll you think it makes it kind of different.
>
> ACC: It does until you start thinking, hey, wait, what am I doing. What is this?

Just as Appellee "[didn't] know exactly what the problem [was]," the command representatives and AFOSI agents who were involved in the search that led to the discovery of the doll did not know whether they had uncovered contraband or evidence of an offense. Appellee lived in a two-person dorm room that contained a common living area and bathroom and two separate bedrooms. While SGT CW inspected one bedroom, SGT LM went into Appellee's bedroom, where she found a doll on Appellee's bed, partially hidden under a blanket and a body pillow. Not sure what to do, she summoned SGT CW. SGT CW approached Appellee's bed and saw "a very life like doll on the bed." He testified, "[I]t shocked me or stunned me in such a way I just—flight response kind of set in, I stepped back and left the room as soon as I could," and called AFOSI. In his pretrial testimony on a defense motion to suppress the results of the search of Appellee's room, SGT CW explained, "I didn't know if it was illegal or not but . . . it was shocking to me. And legal or not, . . . I just thought it needed to have a law enforcement's review."

AFOSI agents had briefed command representatives on proper execution and were present during the inspection to answer questions. AFOSI Special Agent (SA) JL entered the room, approached the bed, and "saw a doll that scared [him] because it kind of looked like a child." He called the legal office for advice because it was "kind of something outside of the realm that [he had] encountered before." Another agent testified at the motion to suppress hearing that he was not sure "if [the doll] was against any MCM, if it was against a rule." Unlike other masturbatory aids, including other sex dolls, which agents would encounter but typically did not seize, he had "never come across a child doll like that so [he] did not know what [he] could or could not do."

While command representatives and the AFOSI agents who were advising them were disturbed by the likeness of the doll to a child, they did not know whether they had uncovered contraband or evidence of any offense. As the agents testified, mere possession of an adult sex doll was not prohibited. Presumably, then, the private use of such a doll for sexual gratification was also not prohibited. And as

9

discussed above, at the time of the charged conduct, the mere possession of a childlike sex doll was not prohibited. Against that backdrop, how was Appellee to know that masturbating in private with a sex doll was prohibited?

Here, as in *Merritt* and *Warner*, neither the *MCM* nor any other source of law placed Appellee on notice that what he did in the privacy of his single-occupancy barracks bedroom with an inanimate object was anything other than private sexual conduct, even if the doll resembled a child. This is so even if we accept the majority's premise that the charged conduct was similar to a child pornography offense, because the "proximity" of his private conduct to child pornography is not enough to have placed him on notice that his conduct was proscribed. *Merritt*, 72 M.J. at 488. This conclusion is not undermined by the fact that Appellee was embarrassed by his own behavior and went to some lengths to hide the doll from public view. As this Court noted in *Merritt*, "the fact that a servicemember may be ashamed of certain conduct is not sufficient by itself to equate to due process notice that the conduct was subject to criminal sanction." *Id*. at 487.

### B. Constitutionally Protected Conduct

Neither the lower court nor this Court reach the question whether Appellee's private, consensual sexual conduct is constitutionally protected under *Lawrence*. In my view, Appellee's private, sexual conduct with an inanimate object in his single-occupancy dorm room in a military barracks was "constitutionally protected conduct, in a place deserving of constitutional protection." *United States v. Bowersox*, 72 M.J. 71, 80 (C.A.A.F. 2013) (Stucky, J., dissenting). First, laws regulating obscenity do not reach into the home, and this applies to a limited extent even where the home is a military barracks. And second, Appellee had a constitutional liberty interest in his wholly private masturbation in his private dorm room, even if he used a childlike doll for his own sexual gratification.

Indecency is synonymous with obscenity, and obscenity is not protected by the First Amendment. *United States v. Moore*, 38 M.J. 490, 492 (C.M.A. 1994). Nevertheless, restrictions on obscene material must be "carefully limited."

*Miller v. California*, 413 U.S. 15, 24 (1973); *see also United States v. Brinson*, 49 M.J. 360, 361 (C.A.A.F. 1998) (stating that "[w]hen the Government makes speech a crime, the judges on appeal must use an exacting ruler."); *Stanley v. Georgia*, 394 U.S. 557, 565 (1969) (explaining that the "mere categorization of [material] as 'obscene' is insufficient justification for such a drastic invasion of personal liberties guaranteed by the First and Fourteenth Amendments"). For example, statutes regulating obscenity do not "reach into the privacy of one's own home." *Stanley*, 394 U.S. at 565. Thus, in *Stanley*, the Supreme Court distinguished cases involving public distribution of obscene materials and held that the First and Fourteenth Amendments prohibit making the mere private possession of obscene material a crime. *Id.* at 566-67 (finding "little empirical basis" for the government's assertion "that exposure to obscene materials may lead to deviant sexual behavior or crimes of sexual violence," and concluding that "the State may no more prohibit mere possession of obscene matter on the ground that it may lead to antisocial conduct than it may prohibit possession of chemistry books on the ground that they may lead to the manufacture of homemade spirits").

"This constitutional right protected in *Stanley* does not automatically apply to servicemembers. Conduct that is constitutionally protected for civilians could still qualify as prejudicing good order and discipline or bringing discredit upon the military." *Kim*, 83 M.J. at 239 (citing *Moon*, 73 M.J. at 388). "[T]he armed forces may prohibit service-discrediting conduct so long as there is a reasonable basis for the military regulation of Appellant's conduct." *United States v. Rollins*, 61 M.J. 338, 345 (C.A.A.F. 2005); *see also United States v. Brown*, 45 M.J. 389, 396 (C.A.A.F. 1996) (stating that "[c]ourts will 'not overturn a conviction unless it is clearly apparent that, in the face of a First Amendment claim, the military lacks a legitimate interest in proscribing the defendant's conduct'" (quoting *Avrech v. Secretary of the Navy*, 520 F.2d 100, 103 (D.C. Cir. 1975))).

This Court has limited *Stanley* to its facts, upholding convictions for indecent conduct and language "beyond the confines of the home." *United States v. Meakin*, 78 M.J.

396, 402 (C.A.A.F. 2019); *see also id.* at 398 (affirming convictions under Article 133, UCMJ, 10 U.S.C. § 933 (2012), where the accused "engaged in a series of online conversations where he described in lurid detail the abuse, molestation, and rape of children with individuals"); *Rollins*, 61 M.J. at 344-45 (affirming a conviction for indecent acts with another under Article 134, UCMJ, where the accused gave his underage brother-in-law a pornographic magazine and suggested they masturbate together); *United States v. Hartwig*, 39 M.J. 125, 130 (C.M.A. 1994) (affirming a conviction under Article 133, UCMJ, where the accused wrote a letter containing indecent language to a fourteen-year-old schoolgirl); *Moore*, 38 M.J. at 492 (affirming a conviction under Article 133, UCMJ, where the accused threatened to disclose a woman's nude photos and sexual indiscretions to her parents if she terminated their relationship; indecent language was "not simply amorous banter between two long-time lovers; rather, it was demeaning vulgarity interwoven with threats and demands for money and sex"); *United States v. French*, 31 M.J. 57, 60-61 (C.M.A. 1990) (affirming conviction under Article 134, UCMJ, where accused asked his fifteen-year-old stepdaughter if he could get in bed with her).

The Court has also limited *Stanley*'s application to conduct occurring in shared military barracks, stating:

> [S]ervicemembers have a reasonable expectation of privacy in a shared barracks room that protects them from unreasonable government intrusions, [but] one's privacy interest in a shared barracks room is [not] coextensive with one's privacy interest in their home. . . . Thus, a soldier has less of an expectation of privacy in his shared barracks room than a civilian does in his home.

*Bowersox*, 72 M.J. at 76. In that case, the Court held that the accused had no right to possess child pornography in a shared barracks room where the accused showed his roommate obscene material on his computer. *Id.* at 72.

Notwithstanding these limitations on *Stanley*'s application to the military, Appellee's conduct falls within the protection afforded private consensual sexual conduct within the home. First, unlike the appellant in *Bowersox*, Appellee

did not share a barracks room and did not show anyone the doll or share what he did with the doll. The doll was discovered in Appellee's single-occupancy military dorm bedroom, where he kept it and engaged in the charged conduct, unseen by anyone. The doll was discovered only as a result of the health and welfare inspection, and his conduct with the doll was discovered only as a result of his admission to investigators after they found the doll. *Bowersox* did not strip servicemembers residing in military barracks of any privacy interests; it only spoke to a diminished privacy interest in shared barracks rooms. Appellee did not share his room and therefore, his conduct did not lose its protected, private character in this case merely because it occurred in a military dorm room.

Second, this Court has made clear that an accused's sexual interest in otherwise-protected material does not alone remove it from constitutional protection. Recently, in *Kim*, this Court determined that *Stanley* was "implicated" where a servicemember pled guilty to indecent conduct for searching pornographic websites for "rape sleep" and "drugged sleep" and told the military judge that watching such videos reminded him of his abuse of his stepdaughter. 83 M.J. at 237-38 (internal quotation marks omitted). Recognizing that "images viewed for sexual gratification do not necessarily lose their First Amendment protection," the Court concluded that the accused's conduct "occupies a constitutional gray area" such that the military judge erred by failing to conduct a detailed plea colloquy to determine "why possibly constitutionally protected material could still be service discrediting in the military context." *Id.* at 239. Similarly, in *Moon*, the Court concluded the military judge erred in accepting an accused's guilty plea under Article 134, UCMJ, for possession of images of nude minors that were neither child pornography nor obscene,[7] noting that "possession of images for one's sexual gratification does not itself remove such images from First Amendment

---

[7] The Court did not hold that the images could not be criminalized under Article 134, only that the plea colloquy failed to establish why protected material was prejudicial to good order and discipline or service discrediting. *Moon*, 73 M.J. at 388-89.

protection. If it did, 'a sexual deviant's quirks could turn a Sears catalog into pornography.' " 73 M.J. at 389 (quoting *United States v. Amirault*, 173 F.3d 28, 34 (1st Cir. 1999)). These cases establish that Appellee's conduct did not lose constitutional protection merely because Appellee used a doll that resembled a child for his sexual gratification.

Private, consensual sexual activity is constitutionally protected under *Lawrence*, 539 U.S. at 578. As we have noted:

> *Lawrence* suggested its own limits by stressing what facts were not involved in the decision: "The present case does not involve minors. It does not involve persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused. It does not involve public conduct or prostitution."

*United States v. Castellano*, 72 M.J. 217, 221 (C.A.A.F. 2013) (quoting *Lawrence*, 539 U.S. at 578).

In *Marcum*, this Court applied *Lawrence* to the military. 60 M.J. at 205. The Court set out three factors to consider in determining whether private consensual sexual activity of a servicemember may be criminalized under the UCMJ: (1) whether Appellee's "conduct was of a nature to bring it within the *Lawrence* liberty interest. Namely, did [it] involve private, consensual sexual activity between adults?"; (2) "whether [Appellee's] conduct nonetheless encompassed any of the behavior or factors that were identified by the Supreme Court as not involved in *Lawrence*. For instance, did the conduct involve minors? Did it involve public conduct or prostitution? Did it involve persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused?"; and (3) whether there are "additional factors relevant solely in the military environment that affect the nature and reach of the *Lawrence* liberty interest." *Id.* at 207. Assuming without deciding that private, consensual sodomy that occurred off-base was conduct of a nature to fall within the *Lawrence* protected liberty interest, the Court held that it was still punishable under Article 125, UCMJ, 10 U.S.C. § 925 (2000), because the accused, a noncommissioned officer, engaged in the conduct with a subordinate airman. 60 M.J. at

208. "While servicemembers clearly retain a liberty interest to engage in certain intimate sexual conduct, 'this right must be tempered in a military setting based on the mission of the military, the need for obedience of orders, and civilian supremacy.'" *Id.* (quoting *United States v. Brown*, 45 M.J. 389, 397 (C.A.A.F. 1996)).

This Court has applied the *Marcum* factors and limited *Lawrence* to its facts. As the Court explained in *United States v. Goings*, "In *Lawrence,* the focal point of the constitutional protection involved an act of sexual intimacy between two individuals in a wholly private setting without more. *Lawrence* did not establish a presumptive constitutional protection for all offenses arising in the context of sexual activity." 72 M.J. 202, 206 (C.A.A.F. 2013) (citations omitted). Instead, the Court clarified that "private consensual sexual activity is not punishable as an indecent act absent aggravating circumstances" such as open and notorious sexual activity. *Id.* at 205. Thus, this Court has upheld convictions for sexual conduct that was not private. *Id.* at 206 (affirming a conviction for an indecent act with another where the accused engaged in consensual sexual activity with a female in his off-post apartment in the presence of a third party whom they allowed to record the sexual activity); *Meakin*, 78 M.J. at 403 (rejecting the argument "that distributing or transmitting obscenity that encourages, describes, and revels in the sexual exploitation of children over the internet falls within the fundamental liberty interest recognized in *Lawrence*"); *United States v. Izquierdo*, 51 M.J. 421, 423 (C.A.A.F. 1999) (holding that the appellant's acts were sufficiently public in nature to constitute indecent acts where he engaged in sexual intercourse with a female in his barracks room while two of his roommates were present; although he hung up a sheet that substantially blocked their view of his side of the room, the roommates were suspicious of the activity on the other side of the sheet); *cf. Izquierdo*, 51 M.J. at 423 (holding that evidence that the appellant engaged in sexual intercourse in his barracks room with a female when the door was closed and no one else was in the room was legally insufficient to establish open and notorious conduct sufficient to sustain finding of guilty of indecent act). Other courts have upheld

15

convictions for private sexual conduct where other aggravating factors involving animals and corpses were present. *United States v. Jagassar*, No. ACM 38228, 2014 CCA LEXIS 64, at *11, 2014 WL 842667, at *2-4 (A.F. Ct. Crim. App. Feb. 4, 2014) (finding that conduct "which involved the use of animals and resulted in injury" to the other participant "meets the requirement for aggravating factors necessary" to punish private, consensual activities); *United States v. Sanchez*, 11 C.M.A. 216, 217-16, 29 C.M.R. 32, 33-34 (1960) (holding that a specification alleging the appellant "wrongfully and unlawfully commit[ted] an indecent act with a chicken . . . with intent to gratify his lust" properly stated an offense under Article 134, UCMJ); *United States v. Mabie*, 24 M.J. 711, 712 (A.C.M.R. 1987) (holding that a specification alleging the appellant committed sexual acts on a human corpse properly stated an offense under Article 134, UCMJ).

The aggravating factors limiting the application of *Lawrence* in other cases are not present here. There is no issue of consent or capacity to consent; no minors involved; no open or public conduct; and no apparent connection between Appellee's conduct and the military environment or mission. The Government tries to rescue its case by positing that "[i]f private possession of virtual child pornography can be constitutionally prosecuted in the military under Article 134, then it follows that committing sexual acts with a child sex doll in private can be as well." As discussed in Section II.A. above, the analogy is inapt. A better analogy would be: if private possession of virtual child pornography can be constitutionally prosecuted in the military under Article 134, then private possession of a child sex doll can be as well. But Appellee was not charged with possession of a child sex doll, nor is it clear under what article such a charge would arise, and even the sergeants who conducted the dorm inspection and the AFOSI agents who were standing by to advise them did not know whether the doll was contraband or evidence of a criminal offense. As discussed above, Appellee's conduct was not analogous to child pornography or to rape, sexual assault, or sexual abuse of a child, and *Stanley* squarely protects the private

possession of obscene material—if the doll can be characterized as such.

## III. Conclusion

For the foregoing reasons, I would affirm the decision of the United States Air Force Court of Criminal Appeals.